**HARRIS, Plaintiff-Appellee, v. PENNSYLVANIA RAILROAD COMPANY, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24116.   Decided December 31, 1957.

A. H. Dudnik, M. I. Nurenberg, for plaintiff-appellee.
Hornbeck, Ritter & Victory, for defendant-appellant.

## OPINION

By KOVACHY, J:

Henry J. Harris filed this action in the Court of Common Pleas of Cuyahoga County for injuries incurred while employed as a member of a wreck train crew of the Pennsylvania Railroad Company on tracks of the Nickel Plate Railroad. His action is based on the Federal Employers' Liability Act, 45 U. S. C. A., Section 51-59, and amendments thereto. A jury rendered a general verdict in his favor for $25,000 on which judgment was entered. Motions by defendant for 1) an order vacating and setting aside the verdict of the jury and for an order for judgment notwithstanding the verdict of the jury, 2) judgment on findings of facts, and 3) new trial, were overruled by the trial court. Defendant appeals these rulings to this court on questions of law. The injuries are not in dispute.

Defendant's assignment of error No. 1 is that: "The trial court erred by its failure to grant final judgment for the defendant by reason of the fact that the verdict of the jury was inconsistent with the finding of fact timely submitted by the defendant and answered by the jury."

Pursuant to §2315.16 R. C., the jury returned findings on particular questions of fact as requested by the defendant. They found that the defendant was negligent "in that the tie of the track he was required to walk was elevated a substantial distance above the ground level and was covered with grease or oil, thereby affording an unstable footing." This finding of fact was an exact adoption by the jury of specification No. 3 of the plaintiff's petition.

To test the correctness or incorrectness of the ruling of the court on the motion here involved, we are required to consider the evidence in the record in the most favorable light to the plaintiff.

In seeking to have the court sustain his first assignment of error, the defendant contends that there was "absolutely no evidence concerning the presence of oil or grease on the cross-tie where plaintiff claims he was injured," and that as a consequence, the verdict of the jury was inconsistent with their finding of fact and requires a reversal. We do not agree with this contention.

In **Klever v. Reid Brothers Express, Inc., 151 Oh St 467, 86 N. E. 2d 608,** the Supreme Court held:

"1. It is the duty of a court to harmonize, if possible, a special finding of a jury with its general verdict."

Also in **Elio v. Akron Transportation Co., 147 Oh St 363, 370, 71 N. E. 2d, 707, 711,** the court said:

"Nicety in the use of terms is not required of the jury in answering interrogatories so long as the court is able to gather the intent of the jury from its answer."

"* * *. **Such answer should be liberally construed with a view to ascertaining the jury's reason for its verdict.**" (Emphasis ours.)

In **Lavender, Adm. v. Kurn, 327 U. S. 645,** the United States Supreme Court held:

"4. Only when there is a **complete absence** of probative facts to support the conclusion reached does reversible error appear." (Emphasis ours.)

Headnotes 3 and 4 in Beattie v. Elgin, Joliet and Eastern Ry. Co., 217 F. 2d 863, U. S. Court of Appeals, Seventh Circuit, read:

"Standard of care required of employer in furnishing employee safe place to work must be commensurate with dangers of the business and duty to provide safe place becomes more imperative as risk increases.

"Employer's duty to use reasonable care to furnish employee with safe place to work is a continuing duty from which employer is not relieved by fact that employee's work at place in question is fleeting or infrequent or fact that employee is sent to premises not belonging to or under control of employer."

Also in Bailey, Admx v. Central Vermont Ry., Inc., 319 U. S. 350, the court held:

"In this suit under the Federal Employers Liability Act, brought in a state court against a carrier to recover damages for the death of an employee, the evidence was sufficient to go to the jury on the question whether, as alleged in the complaint, the defendant was negligent in failing to use reasonable care to furnish the employee a safe place to work."

Again in Webb v. Illinois Central Railroad Co., 352 U. S. 512, it was held:

"a) The test of a jury case under the act is whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the employee's injury."

The guiding principles of law, in resolving this assignment of error, therefore, are: (1) a liberal construction of the findings of fact with the view of harmonizing them with the general verdict as pronounced by the Ohio Supreme Court; and (2) the slightest evidence of negligence on the part of a defendant in not using reasonable care to furnish employee with a safe place to work, even though employee's work is fleeting and is on premises not belonging to or under control of employer, is sufficient to sustain a jury verdict in favor of a plaintiff under the Federal Employers' Liability Act as interpreted by the Circuit Courts of Appeals and the Supreme Court of the United States.

By their findings of fact, the jury in this case, in effect, found that the defendant was negligent in failing to use reasonable care to provide the plaintiff a safe place to work in that he was required to work on a cross-tie that was elevated a substantial distance above the ground level while said tie was covered with grease or oil, affording unstable footing. We find substantial evidence in the record to support these conclusions.

The plaintiff was called to work in the night season to join his wreck train crew in arighting two derailed boxcars. Rain and sleet was falling. The boxcars were to be lifted back on the track by the use of a derrick car. The derrick car, when operating, was supported by four out-riggers, two on each end. These out-riggers were stabilized by blocks of wood under them. One boxcar had been arighted, making it necessary to transfer the derrick and out-rigger blocks in position to aright the second boxcar. It was during this operation that the plaintiff was injured. He was required to remove the bottom-most block under one

of the out-riggers. The block was one foot wide, one-half foot thick, four feet long and weighed close to one hundred pounds and had sunk into the mud to a depth of 4 or 5 inches. It lay parallel to the tracks, with the end required to be extracted from the mud, immediately adjacent to and contiguous with a cross-tie which protruded some five inches above the ground. The tie, according to the plaintiff's testimony, was covered with mud with grease or oil under the mud. Plaintiff's foreman walked by and upon plaintiff's asking for help to extract the block, was told: "You are a big, strong man—we are busy. Hurry up." Two co-workers, testifying for the defendant, said that it was difficult for one man to cope with such a situation alone. Plaintiff testified that the only way he was able to extricate the block under the circumstances was to put one foot on the tie and another on the ground and to tug away, saying, "It was so close to the cross-tie you couldn't hardly get no position to stand to pull it out of the mud." He also testified that as "it jumped out of the mud" and he was about to place it on his shoulder, his right foot, which was on the tie, slipped and caused him to injure his back. The record further discloses that no one experienced any slipping that day but the plaintiff and that a section foreman inspected the tracks the following day in the area where the wreck crew had worked and saw grease "where we keep the switches lubricated."

It seems to us that from these facts the jury with reason could determine that the defendant was negligent in requiring plaintiff to proceed alone in extricating the block under circumstances which required that he place one foot on a tie covered with mud and grease or oil and the other foot on the ground five inches lower. It is common knowledge that the foot on the lower level, under these circumstances, would carry the greater weight and that the foot on the tie, by reason of the resulting imbalance, would be likely to slip on the mud and grease or oil. Yet the foreman who saw, or in the exercise of reasonable care, should have seen this hazardous situation, permitted the plaintiff to continue without help or even a warning as to the danger facing him.

Defendant maintains that since the plaintiff did not categorically testify that he saw grease or oil on the cross-tie that "there is absolutely no evidence concerning the evidence of oil or grease on the cross-tie." In making this statement, defendant closes its eyes to plaintiff's statement, reiterated several times, that he knew there was grease or oil under the mud because his right shoe, the one that was planted on the tie, had a grease upon it while his left shoe, the one planted on the ground, had only mud upon it. The jury may well have reasoned that grease would have been found on both shoes had grease been present on the ground other than on the tie and that since the plaintiff saw it only on the shoe that had been on the tie, the jury could have inferred that it came from the tie. This testimony, considered with the obvious fact that a foot slipping on a surface gives such a person some feeling as to whether the slipping is due to mud or grease or oil, together with the answers of the plaintiff (no less than ten times) that there was "grease on the tie" would justify a jury finding that there was grease or oil on the tie. After all, the jury saw and heard the wit-

ness and was in a position to determine the credit and the weight to be given his testimony. Moreover, they had the right to draw fair and reasonable inferences from the testimony in the light of all surrounding circumstances. This was their function under the law, and, to hold, in view of this state of the record, that there was insufficient evidence to support the findings of fact would, in our opinion, be tantamount to denying this plaintiff the right to have his complaint passed upon by a jury, a clear right accorded him under the Federal Employers' Liability Act.

In Bailey v. Central Vermont Ry., Inc. supra., the court said at page 354:

"* * * To deprive these (railroad) workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them."

In Wilkerson v. McCarthy, 336 U. S. 53, 55, the court said:

"This court has previously held in many cases that where jury trials are required, courts must submit the issues of negligence to a jury if evidence **might** justify a finding either way on these issues." (Emphasis ours.)

and Lavender, Adm. v. Kurn, supra, the court held:

"2. There being a reasonable basis in the record for an inference by the jury that the injury resulted from the defendant's negligence, it is not within the province of the appellate court to weigh the conflicting evidence, judge the credibility of witnesses, and arrive at a conclusion opposite from that reached by the jury.

"3. In suits under the Federal Employers' Liability Act, the appellate court's function is exhausted when the evidentiary basis for the jury's verdict becomes apparent, it being immaterial that the court might draw a contrary inference or consider another conclusion more reasonable.

"4. Only when there is a **complete** absence of probative facts to support the conclusion reached by the jury does reversible error appear. (Emphasis ours.)

And at page 653, the court said:

"It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference."

See Arnold v. Panhandle and Santa Fe Ry. Co. 353 U. S. 360; McBride v. Toledo Terminal Railroad Co., 354 U. S. 517; Ringhiser v. Chesapeake & Ohio Ry. Co., June 10, 1957, 354 U. S. 901.

It seems to us, moreover, that, under the circumstances disclosed in the record, the defendant should have anticipated the plaintiff injuring himself when he was required to stand with one foot on a tie raised five inches about the ground and covered with mud and grease or oil and the other foot on the ground while tugging at a heavy timber imbedded in the ground. Defendant's foreman should have either ordered assistance for him, or provided that the mud and grease or oil be removed or its slickness reduced in some way. In any event, we conclude that fair-

minded men and women could reasonably conclude from such evidence that the employer failed to exercise reasonable care to see that its employee had a safe place in which to work and that as a consequence it was negligent.

In Rogers v. Missouri Pacific Rd. Co., 352 U. S. 500, 503, the court said:

"These were probative facts from which the jury could find that respondent was or should have been aware of conditions which created a likelihood that petitioner, in performing the duties required of him, did sustain just such an injury as he did."

We believe, therefore, that the findings of fact made by the jury were supported by the record and were consistent with the general verdict rendered by them.

Defendant's assignment of error No. 2 that "The trial court erred in overruling defendant's motion to strike certain specifications of negligence from plaintiff's petition" and assignment of error No. 3, that "The trial court abused his discretion in overruling defendant's motion for a new trial on the ground that the verdict of the jury and the judgment of the court were contrary to law: are not well taken and are overruled.

Consistent with the foregoing, the Court of Common Pleas was not in error in overruling a motion for an order setting aside the verdict of the jury and for judgment notwithstanding the verdict of the jury, a motion for judgment on findings of fact, and a motion for new trial. Hence the judgment of said court is affirmed.

HURD, J, concurs.
SKEEL, J, dissents.

## DISSENTING OPINION

By SKEEL, PJ.:

I am unable to agree with the conclusions reached by the majority of this court. The action is one for personal injuries, it being the claim of the plaintiff that the defendant negligently caused his injuries within the purview of the Federal Employers' Liability Act.

A restatement of the facts, at least in part, seems desirable to clearly present the issues. On March 29, 1953, the plaintiff was employed by the defendant upon a special assignment (aside from his usual work) as a member of a wreck train crew. He had reported for duty the evening before the accident at 7:15 P. M. to assist in retracking two freight cars that had been derailed on the tracks of the Nickel Plate Railroad at the Northern Ohio Food Terminal located at East Ninth and Broadway in Cleveland, Ohio.

At the time of the injury to plaintiff, which occurred at about 12:45 A. M. of the next day, one car had been retracked and work had been started on the second car. The plaintiff, with others, was blocking the out-rigging of the derrick car. The work consisted of carrying wooden blocks said to be 6" x 12" x 48", weighing 50 to 60 lbs., to be placed under the out-riggers. This was done to stabilize the derrick car when the

derrick was in use. The block which plaintiff was attempting to pick up had been forced into the mud by the pressure of the out-rigger, stabilizing the derrick while retracking the first car. The evidence discloses that it was a wet, sleety night and the activity of the workers had created a muddy condition at the place of the work. The blocks to support the out-rigger were placed between the tracks (sometimes referred to as the devil strip), the bottom layer (three blocks in number) being laid lengthwise beginning at the end of the ties of the track on which the derrick car was spotted. The plaintiff's testimony of how the injury took place in his case in chief was as follows:

"A. I couldn't get no grip on it because it was stuck in the mud. I started to tug. I asked the boss for some help. He said, 'You are a big strong man.' He said, 'We are busy. Hurry up.' So I start tugging the block, tug it and pull it, and so all at once it jump out of the mud and I slipped on the cross-tie that I was standing next to, a tie—I couldn't get no good grip, I was so close to it. So when I slipped on the cross-tie, that is when I got that catch in my back.

"* * *

"Q. Now, were you able to stand on the ground while you were tugging at this thing?

"A. No, I had one feet on the cross-ties. There was no room, I can't stand on the ground, no room on the cross-tie. And one feet on the cross-tie and one next to the side of the tie, on the other side, my left feet.

"Q. And was the cross-tie even with the ground?

"A. The cross-tie?

"Q. Yes.

"A. Well, that was about five inches off the ground.

"Q. You mean the top of the cross-tie?

"A. Yes.

"Q. And was that block wet or dry, or what?

"A. It was wet and slimy and sort of muddy-like.

"Q. Did you feel any immediate pain in your back?

"A. Yes, I did.

"Q. Were you able to finally pick the block up?

"A. Yes, I finally pick the block up and took it over to the next guy, Joe Ducato, and he took it off my shoulder."

The allegations of negligence in plaintiff's petition are as follows:

(1) In that it refused his request for help and peremptorily ordered the plaintiff to pick up and carry said wood block without help.

(2) In that it hurried the plaintiff in said work.

(3) In that the tie of the track he was required to walk was elevated a substantial distance above the ground level and was covered with grease or oil, thereby affording unstable footing.

(4) In that the defendant failed to exercise ordinary care to provide plaintiff with a reasonably safe place to perform his work.

The defendant requested a special finding of fact which was answered by the jury as follows:

"1. Was the defendant negligent?

"**Answer: Yes.**

"2. If your answer to Number 1 is 'yes,' state of what that negligence consisted.

(Answer) "In that the tie of the track he was required to walk was elevated a substantial distance above the ground level and was covered with grease or oil, thereby affording unstable footing."

The errors claimed by the defendant are:

"1. The trial court erred by its failure to grant final judgment for the defendant by reason of the fact that the verdict of the jury was inconsistent with the finding of fact timely submitted by the defendant and answered by the jury.

"2. The trial court erred in overruling defendant's motion to strike certain specifications of negligence from plaintiff's petition.

"3. The trial court abused his discretion in overruling defendant's motion for a new trial on the ground that the verdict of the jury and the judgment of the court were contrary to law."

Section I of the Federal Employers' Liability Act provides:

"Every common carrier by railroad, while engaged in commerce * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier or by reason of any defect or insufficiency, due to its negligence in its cars, engines, appliances, machinery, track, roadbed works, boats, wharves, or other equipment. 45 U. S. C. Sec. 51."

The term negligence is not defined in the Act so that its meaning must be governed by common law principles as established and applied in the federal courts. The decisions of state courts, defining the meaning of negligence, can be of no help. The question is clearly and completely one to be determined by federal law. The Act, however, is one which bases liability on negligence. It is not a Workmen's Compensation Act where the right to participate in an insurance fund is dependent only on injuries sustained while acting in the course of the employee's employment and recovery is limited to compensation and not damages. The primary function of the Act was to require carriers by rail to exercise ordinary care in relation to the unusual hazards of railroading and to eliminate the common law defenses of assumption of risk, contributory negligence and the fellow servant doctrine. The greater degree of hazard associated with the industry requires greater vigilance by the employer to protect the safety of employees. The question here is—Was that which should or could have been done, in the practical operation of the system, in the exercise of proper care, omitted, which omission in part was a contributing or proximate cause of the injury sustained by the petitioner? A clear statement of the basis of liability under the Act is found in Illinois Central Railroad Co. v. Skaggs, 240 U. S. 66, 36 S. Ct. 249, 60 L. ed. 528, where it was held:

"* * * before a recovery can be had, it must be shown by either direct or circumstantial evidence that the railway company was negligent; or in other words, that it owed a care and failed to exercise it."

See also Urie v. Thompson, 337 U. S. 163, 69 S. Ct. 1018, 93 L. ed. 1282.

The authorities cited by the contending parties attempt to exemplify the meaning of the word negligence within the rule as thus stated. In each case the controversy has to do with determining whether the facts, when considered in their most favorable light to establish the responsibility of the carrier, are sufficient to permit the submission of the case to the jury on the question of negligence.

In the case of Blair v. Baltimore & Ohio Railroad Co., 323 U. S. 600, 63 S. Ct. 545, 89 L. ed. 490, the basis of the alleged liability of the respondent was its failure to furnish tools reasonably suited to the work at hand as well as a safe place to work and to furnish competent help. It was also charged that the railroad's employees who were assigned to assist in the work at hand were incompetent under the circumstances. The petitioner, with others, was attempting to move three, 30', 10" tubes covered with grease and weighing 1,000 lbs each, from a railroad car. Petitioner had reported to his superior that the tubes were too heavy for him to move. After his suggestion that the car should be consigned directly to the customer for want of proper equipment to unload and reload the pipes was rejected by petitioner's superior, he was told to get help and proceed with the work, which he did. In attempting to load the second pipe after the first one had been successfully moved, the pipe slipped, causing the truck to kick back, injuring the petitioner. Under the facts of this case, it is said in the headnote of Vol. 65, Supreme Court, page 565, that:

"Evidence that plaintiff, a freight handler, was assisted by a section man, aged 60, and a car inspector, 68, in moving through a warehouse, from freight car to motor truck, a greased 1,000-pound 10-inch steel tube about 30 feet long, by using a 5-foot nose truck about 2 feet high, and that the tube slipped and plaintiff's helpers released their holds, and the truck kicked back against plaintiff, was sufficient to take the railroad's negligence to the jury.

"The negligence of a railroad under the Federal Employers' Liability Act may be determined by viewing its conduct as a whole, especially where the elements indicating negligence are closely interwoven, and where each imparts character to the others."

The case of Wilkerson v. McCarthy, 336 U. S. 53, 69 S. Ct. 413, 93 L. ed. 497, wherein a switchman was injured while in the yard of the respondents in the furtherance of his duties, it was alleged by petitioner that in the course of his duties, he was required to walk over a wheel pit on a narrow boardway and that due to respondent's negligence, he fell into the pit, thereby suffering injuries. The pit which was 4' 2½" wide and 11' deep and about 40' long, was situated underneath at least three parallel tracks. When not in use, the pit was covered with heavy boards which were used as walkways by employees. When in use these boards were removed, leaving one permanent board 22" wide which was then used as a walkway by employees until about May 1, 1945 when, to block its use when the pit was open, "safety chains" were erected enclosing 16½' of the west end of the pit. On the day of the accident, the pit was open, the chains were up and a tourist car spotted over the pit so that for the petitioner to use the permanent plank, he had to

"squeeze" through a 9½" opening between the car and the post holding the safety chain. There was another course the petitioner could have used in complete safety. It was claimed that the permanent plank had some oil or grease on it as a result of the character of the work carried on in the pit. The petitioner, after squeezing through the 9½" opening, and while walking on the 22" plank, slipped and fell into the pit. There was no rule prohibiting employes, including pit workers, from using the permanent board when the pit was open. The Supreme Court of Utah held the erection of the chains was evidence of orders not to use the permanent board when the chains were up, thereby holding that no negligence of the respondent was shown and, therefore, entered final judgment in respondent's favor. In reversing the State Supreme Court. The United States Supreme Court said, beginning on page 61 of the opinion:

"There was, as the state court pointed out, evidence to show that petitioner could have taken a slightly longer route and walked around the pit, thus avoiding the use of the board. This fact, however, under the terms of the Federal Employers' Liability Act, would not completely immunize the respondents from liability if the injury was 'in part' the result of respondents' negligence. For while petitioner's failure to use a safer method of crossing might be found by the jury to be contributory negligence, the Act provides that 'contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee * * *.

"Much of respondents' argument here is devoted to the proposition that the Federal Act does not make the railroad an absolute insurer against personal injury damages suffered by its employees. That proposition is correct, since the Act imposes liability only for negligent injuries. Cf. Coray v. Southern Pac. Co., 335 U. S. 520. But the issue of negligence is one for juries to determine according to their finding of whether an employer's conduct measures up to what a reasonable and prudent person would have done under the same circumstances. And a jury should hold a master 'liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances,' bearing in mind that 'the standard of care must be commensurate to the dangers of the business.' Tiller v. Atlantic C. L. R. Co., 318 U. S. 54, 67.

"There are some who think that recent decisions of this Court which have required submission of negligence questions to a jury make, 'for all practical purposes, a railroad an insurer of its employees.' See individual opinion of Judge Major, Griswold v. Gardner, 155 F. 2d 333, 334. But see Judge Kerner's dissent from this view at p. 337 and Judge Lindley's dissenting opinion, pp. 337-338. This assumption, that railroads are made insurers where the issue of negligence is left to the jury, is inadmissible * * *."

Mr. Justice Frankfurter, in his concurring opinion, said on page 65: "* * * If there were a bright line dividing negligence from non-negligence, there would be no problem. Only an incompetent or a wilful judge would take a case from the jury when the issue should be left to

the jury. But since questions of negligence are questions of degree, often very nice differences of degree, judges of competence and conscience have in the past, and will in the future, disagree as to whether proof in a case is sufficient to demand submission to the jury. The fact that a third court thinks there was enough to leave the case to the jury does not indicate that the other two courts were unmindful of the jury's function. The easy but timid way out for a trial judge is to leave all cases tried to a jury for jury determination, but in so doing he fails in his duty to take a case from the jury when the evidence would not warrant a verdict by it. A timid judge, like a biased judge, is intrinsically a lawless judge."

The case of Lavender v. Kurn, 327 U. S. 645, 66 S. Ct. 740, 90 L. ed. 916, is cited by both parties to this action. In this case the decedent, L. E. Haney, employed by the respondent as a switch-tender, was killed on December 21, 1939, at the point of his employment where the tracks of The St. Louis, San Francisco Ry. and the Illinois Central cross. A judgment for the petitioner had been reversed by the Supreme Court of Missouri, holding there was no substantial evidence of negligence on the part of the railroad company to submit to the jury. The facts as contended by the petitioner are set forth in part on page 648 of the opinion above cited. The respondent's theory was that petitioner was murdered. The court held:

"1. In this action under the Federal Employers' Liability Act, the evidence of the defendants' negligence (detailed in the opinion) was sufficient to justify submission of the case to the jury; and the judgment of the appellate court setting aside the verdict for the plaintiff can not be sustained.

"2. There being a reasonable basis in the record for an inference by the jury that the injury resulted from the defendants' negligence, it is not within the province of the appellate court to weigh the conflicting evidence, judge the credibility of witnesses, and arrive at a conclusion opposite from that reached by the jury.

"3. In suits under the Federal Employers' Liability Act, the appellate court's function is exhausted when the evidentiary basis for the jury's verdict becomes apparent, it being immaterial that the court might draw a contrary inference or consider another conclusion more reasonable."

In the case of Jesionowski v. Boston & Main Railroad Co., 329 U. S. 452, 67 S. Ct. 401, 91 L. ed 416, a switchman was killed when a train was derailed while backing onto a siding. The derailment was said by the respondent to have been caused by the negligence of the deceased in throwing the switch. However, there were other factors involving splintered planks. The court, in applying the doctrine of res ipso loquitur, held:

"1. The doctrine of res ipsa loquitur was applicable and the judgment against the railroad is sustained.

"2. In this case, the jury's right to draw inferences from evidence and the sufficiency of the evidence to support a verdict are federal questions.

"3. The facts support the jury's findings both that the deceased's conduct did not cause the accident and that the railroad's did."

In the case of Jackson v. Illinois Northern Railway, 224 F. 2d 76, a railroad hostler helper experienced a hernia in picking up a large frozen mass of sand. He had been furnished the proper tools to do the work safely. The headnote of the case reads:

"Where railroad hostler helper, who was required to shovel sand in sandhouse, and who was furnished with pick, chose to pick up with his hands a large frozen mass of sand instead of breaking it into smaller pieces, so that he could shovel it, and the mass broke, and he strained himself and suffered an inguinal hernia, railroad was not liable under the Federal Employers' Liability Act for his injuries."

In the case of Webb v. Illinois Central Railroad Co., 352 U. S. 512, .77 S. Ct. 451 (Feb. 25, 1957), 1 L. ed. 2d 503, the petitioner, a brakeman, sustained an injury when he slipped on a clinker, about the size of his fist, embedded in the roadbed of his employer. A judgment for the petitioner was reversed by the Court of Appeals of the Seventh Circuit (228 F. 2d 257) on the ground that the trial court should have directed a verdict for the respondent, there being no evidence of negligence. The Supreme Court of the United States reversed the judgment of the Circuit Court of Appeals, holding there was ample evidence to justify, with reason, a jury finding of negligence. The parties conceded that a clinker in a roadbed created a hazardous condition (insecure footing). The only question presented was whether defendant was negligent in creating or permitting such hazard to exist. There was evidence that a section foreman had failed to screen for large clinkers which was a usual practice. Paragraphs 5 and 6 of the headnotes of the Supreme Court Reporter, above cited, provide:

"5. In action under Federal Employers' Liability Act for injuries sustained by brakeman when he stepped on clinker, embedded in employer's roadbed, and fell, evidence would not reasonably support finding that clinker came from source other than ballast used in road repair operations; but even if there were other possible sources of clinker, directed verdict for employer would not be justified where evidence would reasonably support jury finding that employer had negligently caused clinker to be in ballast used in repair work and had failed to use proper care to discover and remove it.

"6. Under Federal Employers' Liability Act, test of jury case is whether proofs justify with reason conclusion that employer's negligence played any part, even the slightest, in producing injury or death for which damages are sought; and it does not matter that, from evidence, jury could also with reason, on grounds of probability, attribute result to other causes, including employee's contributory negligence."

The Supreme Court of the United States in the case of Rodgers v. Missouri Pacific Railroad Co., 352 U. S. 500, 77 S. Ct. 443, 1 L. ed. 2d, 493, (decided February 25, 1957) gave further consideration to the question of whether an action by a petitioner under the Federal Employers' Liability Act should be submitted to a jury on the question of negligence. Here an employe was injured by falling over the top of a retaining

wall of a culvert. The petitioner was engaged as a laborer while working on a right of way with others in burning weeds by the use of a crude torch. (The work had formerly been done by the use of a flame thrower operated from a car running on the tracks.) The petitioner had been instructed by his superior that while doing this work, he should stop weed-burning operations to inspect journals of passing trains for "hot boxes." At the time of his injury, a train was passing by and while inspecting the journals of the trucks, a wind was created by the train-fanned flames from the burning weeds and as he stepped back to avoid the flames, he fell over the culvert. In paragraphs 2, 3, 4, 5 and 6 of the report above cited, the headnotes provide:

"2. In action under Federal Employers' Liability Act for personal injuries sustained by section gang laborer, who had, in accordance with instructions, stopped his weed-burning operations to inspect journals of passing train for hot boxes, and slipped and fell while retreating from flames fanned by train, evidence would support jury finding that employer had, or should have, been aware of conditions which created likelihood that employee, in performing duties required of him, would suffer just such an injury as he did.

"3. Where employer was or should have been, aware of conditions which created likelihood that employee, in performing duties required of him, would suffer just such an injury as he did when he fell while retreating from flames of weeds which he was burning, it was irrelevant to employer's liability, under Federal Employers' Liability Act, whether immediate reason for employe's slipping had been presence of gravel, negligently allowed by employer to remain on surface of culvert, or some unidentified cause.

"4. Not the court, but the jury, is tribunal to determine fact, when uncertainty as to fact arises from testimony.

"5. Where probative facts would support with reason verdict favorable to plaintiff, in action under Federal Employers' Liability Act, decision as to whether plaintiff's conduct had been sole cause of his mishap was exclusively for jury to make.

"6. Under Federal Employers' Liability Act, test of jury case is whether proofs justify with reason conclusion that employer negligence played any part, even the slightest, in producing injury or death for which damages are sought, and it does not matter that, from the evidence, jury may also with reason, on grounds of probability attribute result to other causes, including employe's contributory negligence, since statute expressly imposes liability upon employer to pay damages for injury or death due in whole or in part, to employer's negligence."

From the foregoing authorities, it must be clear that if there is any evidence whatever by which it could be said that the carrier was negligent, such question becomes one for the jury. The cases just cited certainly circumscribe the most extreme fact situations where the question of negligence has been held to be a jury question by federal courts. We must, therefore, examine the evidence here presented to determine whether there is the slightest evidence of the violation of a duty imposed by law on the respondent to protect the safety of the petitioner. In

160

considering this question, the findings of fact of the jury confine the inquiry to: (1) Does maintaing the "ends of the ties of the track * * * a substantial distance above the ground level" (in this case by petitioner's evidence about 5")—a condition which a railroad carrier must avoid for the safety of those who work along such right of way; and (2) Is oil or grease covered with mud on a tie along a railroad right of way a condition which a carrier must provide against, even though the track is not that of such carrier and the operation or work in progress is that of a wrecking crew where the situs of their work is fixed by the place where the disaster happens. The declaration by the majority of this court that the failure to grant assistance to the petitioner upon request can now be considered as an act of negligence supporting the verdict cannot be sustained. This contention cannot be so because of the jury's findings as to respondent's negligence, eliminating that claim from further consideration.

The first of these questions must be answered in the negative. It is a matter of common knowledge that the ends of the ties of a railroad track usually protrude above the ballast along the side of the track, and, therefore, the conclusion of the jury that to permit such condition to exist constituted negligence has no merit whatsoever. There is not a word of evidence that the ties here in question were any different from those generally found in all railroad construction. It is likewise true that this respondent, who did not own the roadbed where plaintiff was required to work under emergency conditions, could not be presumed to have knowledge of dangers, if any, hidden by weather conditions. It is also true, and the plaintiff's evidence supports the fact, that the weather was inclement,—the ground was covered with sleet and an extremely muddy condition was created by the work of retracking the boxcars. However, there is not the slightest suggestion that, if there were grease or oil on a tie, under these circumstances, that in the exercise of the duty of a carrier to protect the safety of its employees, the presence of the oil or grease could, with reasonable diligence, have been discovered.

The plaintiff, in attempting to fix the respondent's liability, contends that because he found grease and mud on his shoe after he got back to the sitting car, that he must have gotten such grease from the place where his foot is said to have slipped when lifting the out-rigger block. Such conclusion is based on speculation and not factual proof.

For the foregoing reasons, it should be concluded that there is no evidence that would justify a submission to a jury the question of negligence founded upon the rules for which the foregoing authorities stand. The judgment should, therefore, be reversed and final judgment entered for the appellant.