GALLICK, Plaintiff-Appellee, v. BALTIMORE AND OHIO
RAILROAD CO., Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 25087.   Decided March 23, 1961.

Mr. A. H. Dudnik, Mr. M. I. Nurenberg and Mr. Meyer Cook, for plaintiff-appellee.

Messrs. Baker, Hostetler & Patterson and Mr. R. E. Leasure, for defendant-appellant.

(DOYLE, P. J., and HUNSICKER, J., of the Ninth District, and GRIFFITH, J., of the Seventh District, sitting by designation in the Eighth District.)

HUNSICKER, J. James Gallick, an employee of Baltimore and Ohio Railroad Co., brought an action in the Common Pleas Court of Cuyahoga County, Ohio, under the Federal Employers' Liability Act, alleging that he suffered injury because he was not furnished, by his employer, a reasonably safe place to work, and was required to work under unhealthful and unsanitary conditions.

Mr. Gallick, along with other employees of the Baltimore and Ohio Railroad Co., was engaged, over a period of time, at a place known as the "230 Seneca Street job." The location of the work was in the "flats" section of Cleveland, Ohio, a highly-industrialized area adjacent to the Cuyahoga River, a short distance south of the river's entrance into Lake Erie. Specifically, Mr. Gallick, the foreman of the railroad crew, along with others, spotted cars to be moved into the yards, or to industrial establishments. He was required, during the month of August, 1954, to walk along a B. & O. Railroad right of way, consisting of one line which ran along the river near the industrial plants serviced by such railroad.

This railroad line passed **under** several bridges, among

which was the Columbus Street bridge. Under this bridge, on the east side, of the railroad right of way, was a ditch, which, for many years, contained stagnant water, both in the dry and wet seasons of the year. In and about this ditch were dead and decayed rats and pigeons. Insects were seen on, over and about this stagnant pool. The evidence shows that the condition of this pool was known to the employees of the railroad for a long time before the occurrence about which Mr. Gallick complains.

Mr. Gallick, on or about the 10th day of August, 1954, while walking along the west side of the railroad right of way, under and also near the Columbus Street bridge, stopped momentarily to see where the railroad engine was that would pick up some cars. He then took a step or two, at which time he felt a bite on his left leg, a few inches above his left knee. He put his hand on the place where he felt this bite, and grasped between his finger and thumb an object which he said felt like an insect, and which, when squeezed, cracked or popped. This object, or insect, was inside his left trouser leg. When he released the object it slipped out of his left trouser leg. Before he could locate it, the engine was nearby, and he boarded one of the cars. Mr. Gallick said the object was about as long as the width of three fingers, and as thick as his little finger. The size of the insect was thus indicated to be about two inches long by one-half inch wide.

Later that day, after his lunch period, about 7 o'clock p. m. (Mr. Gallick worked from 3 p. m. until 11 p. m.), he went to the washroom; and, because he felt some sensation on the back of his left leg, he washed the place where he had felt the bite. When he arrived home after work, he showed this place to his wife, who said it looked like a bite, and that it was pink on the top, and about the size of a fingernail. It grew redder and larger, and, since it did not heal, but broke open like a boil, Mr. Gallick went to a doctor, several days after the alleged bite, who administered penicillin and gave an ointment for dressing the by-now open lesion.

The wound did not respond to treatment, and another doctor was consulted. The condition grew progressively worse, until, after several years of hospital attention by many, many doctors,

examinations, tests and treatments, including the amputation of both legs, Mr. Gallick is permanently confined in a hospital suffering from many severe pus-forming lesions on his body. It was stated by one of the doctors who treated him that one arm may have to be amputated to relieve the effect of a lesion in the armpit. None of the doctors who have treated and studied his case can give the etiology of his condition.

One hospital and some of the doctors state the condition of Mr. Gallick to be "pyoderma-gangrenosa, secondary to insect bite."

The trial of Mr. Gallick's action against B. & O. Railroad Company proceeded upon two claimed grounds of negligence; first, "(4) In that it failed to provide plaintiff with a reasonably safe place in which to perform his work duties"; and, second, "(6) In that it knew that, by permitting said pool of stagnant water to accumulate dead pigeons, rats, bugs and vermin, insects would be attracted to said area, and that its employees would have to work under unhealthful and unsanitary conditions."

Baltimore & Ohio Railroad Company, denying any negligence on its part, said that, if the condition of Mr. Gallick arose from an insect bite sustained by him while working upon railroad property, "the likelihood of harm and consequences" to Mr. Gallick from such bite "were beyond the realm of reasonable probability or foreseeability, with the result that no duty arose requiring the exercise of care by" the railroad "to protect" Mr. Gallick "from any such risk."

After a lengthy trial, and the submission of the case to a jury with a special verdict and numerous interrogatories, a judgment for $625,000 was entered by the Court of Common Pleas.

From this judgment an appeal on questions of law has been brought to this court by Baltimore and Ohio Railroad Co., which set out sixteen assignments of error, as follows:

"1. The court erred in overruling defendant's demurrer to plaintiff's petition.

"2. The court erred in reducing the seated panel to 10 jurors by excusing two seated members of the jury panel of twelve at the request of the two jurors, after defendant had

exhausted its four peremptory challenges to such panel and plaintiff had not exhausted its peremptories, and in proceeding further with the remaining panel of 10 over defendant's objection.

"3. The court erred in limiting the jury's view of defendant's premises and surrounding territory to a very small part of the area which was relevant and pertinent to the issues in the case and about which there was evidence presented at the trial.

"4. The court erred in admitting evidence offered by plaintiff over the objection of this appellant.

"5. The court erred in overruling defendant's motion for judgment on the pleadings, and for a directed verdict at the close of plaintiff's case and at the close of all the evidence.

"6. The court erred in refusing to give to the jury before argument certain written requests to charge submitted by this appellant.

"7. The court erred in submitting to the jury before argument certain special charges submitted by the adverse party and objected to by this appellant.

"8. The court erred in its charge to the jury.

"9. The court erred in refusing to submit to the jury certain special interrogatories to be answered by the jury, as requested by appellant.

"10. The court erred in submitting to the jury an improper, misleading, and incomplete special verdict.

"11. The court erred in entering judgment for plaintiff upon the special verdict returned by the jury, and in not entering judgment for the defendant thereon.

"12. The court erred in overruling appellant's motion for judgment notwithstanding the verdict.

"13. The court erred in overruling appellant's motion for a new trial.

"14. The damages assessed by the jury in its special verdict are excessive and appear to have been given under the influence of passion and prejudice.

"15. The damages assessed by the jury are excessive and not sustained by the evidence.

"16. Other errors occurring at the trial and in the judgment."

We do not believe it necessary to discuss in detail each of the assigned errors, but, since this matter is brought under the Federal Employers' Liability Act, our consideration of the problem posed by these assignments of error must be controlled by the interpretation of such act by the Supreme Court of the United States. *Dice* v. *Akron, Canton & Youngstown Rd. Co.*, 91 Ohio App., 239; *Dice* v. *Akron, Canton & Youngstown Rd. Co.*, 342 U. S., 359; *Harris* v. *Pennsylvania Rd. Co.*, 108 Ohio App., 541.

"Under this statute (45 U. S. C. A., Sec. 51) the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers* v. *Missouri Pacific Rd. Co.*, 352 U. S., 500, at 506; 77 S. Ct., 443.

The usual concept of proximate causation, as we know it in the law of Ohio, is not to be applied in cases such as we have herein, which arise under the Federal Employers' Liability Act. *Rogers* v. *Missouri Pacific Rd. Co.*, *supra*; *Schulz, Admx.*, v. *Pennsylvania Railroad Co.*, 350 U. S., 523, 76 S. Ct., 608.

With these preliminary and fundamental statements of the rules we must follow in determining the instant case, let us examine the special findings of the jury to see what they found as to the determinative issues.

The determinative issues may be briefly summarized as follows: Is there some credible evidence to support a finding of employer negligence? Did such negligence play any part, even the slightest, in producing the "bite" suffered by Mr. Gallick?

We are required, in examining the special finding of a jury, to liberally construe the answers with a view to ascertaining the meaning of such answers. *Klever* v. *Reid Brothers Express, Inc., et al.*, 151 Ohio St., 467, 86 N. E. 2d, 608; *Elio* v. *Akron Transportation Co.*, 147 Ohio St., 363, 71 N. E. 2d, 707.

The rule announced by the Supreme Court of the United States, with reference to the effect of local practice rules, such as the interpretation of interrogatories, is found in *Arnold* v. *Panhandle & Santa Fe Railway Co.*, 353 U. S., 360, 1 L. Ed. 2d, 889, 77 S. Ct., 840, wherein that court said that the assertion

of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice.

There are inconsistencies in the answers to the special verdict and the interrogatories made by the jury in the instant case. They did find, however, that the Baltimore and Ohio Railroad Co. was negligent in maintaining the stagnant pool by the side of its track. Although the jurors stated that they could not answer the question as to Mr. Gallick being furnished a safe place to work, they did find a cause and effect relationship between the stagnant pool and the bug bite suffered by Mr. Gallick. After its affirmative answer to the proximate causal relationship between the stagnant water, the dead rats, the dead pigeons, the insect bite, and the present physical condition of the plaintiff, the jury found no reasonable probability or foreseeability of the Baltimore and Ohio to appreciate this proximate causal relationship between the stagnant water and other conditions leading to the present physical condition of Mr. Gallick.

Are such findings of the jury sufficient to sustain the judgment? It is difficult to reconcile the several pronouncements of the Supreme Court of the United States with reference to the application of the Federal Employers' Liability Act. A liberal attitude on the part of the court majority is apparent, but an adherence to fixed principles is not readily discernible. 69 Harvard Review, 1441.

In many of the cases which we have examined, the causative factor has been some tangible object owned by the railroad, even though it was only gravel or an oversized cinder in the roadbed. *Webb* v. *Illinois Central Rd. Co.*, 352 U. S., 512, 1 L. Ed. 2d, 503; *Ferguson* v. *Moore-McCormack Lines, Inc.*, 352 U. S., 521, 1 L. Ed. 2d, 511; *Lavender, Admr.,* v. *Kurn et al.*, 327 U. S., 645, 90 L. Ed., 916.

In the instant case, as well as in *Sentilles* v. *Inter-Carribbean Shipping Corp.*, 361 U. S., 107, 4 L. Ed. 2d, 142; *Schulz, Admx.,* v. *Pennsylvania Rd. Co.*, 350 U. S., 523, 100 L. Ed., 668; and *Inman* v. *Baltimore & Ohio Rd. Co.*, 361 U. S., 138, 4 L. Ed. 2d, 198, that which caused the injury was an outside force, such as an unusual wave, ice on a boat, or a third person.

Through all these cases there runs the underlying general principle that, before a plaintiff may recover damages, there

must be proof of some causal relationship between the employer negligence and the injury or death of the workman.

In *Tennant, Admx.,* v. *Peoria & Pekin Union Ry. Co.,* 321 U. S., 29, 88 L. Ed., 520, the court said:

"In order to recover under the Federal Employers' Liability Act, it was incumbent upon petitioner to prove that respondent was negligent and that such negligence was the proximate cause in whole or in part of the fatal accident. *Tiller* v. *Atlantic Coast Line R. Co.,* 318 U. S., 54, 67, 87 L. Ed., 610, 617, 63 S. Ct., 444, 143 A. L. R., 967.

"Petitioner was required to present probative facts from which the negligence and the causal relation could reasonably be inferred. 'The essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.' *Galloway* v. *United States,* 319 U. S., 372, 395, 87 L. Ed., 1458, 1473, 63 S. Ct., 1077; *Atchison, T. & S. F. R. Co.* v. *Toops,* 281 U. S., 351, 74 L. Ed., 896, 50 S. Ct., 281."

In the recent case of *Inman* v. *Baltimore & Ohio Rd. Co.,* 361 U. S., 138, 4 L. Ed. 2d, 198, the court, after citing with approval the case of *Rogers* v. *Missouri Pacific Rd. Co.,* 352 U. S., 500, 1 L. Ed., 493, said: "The Act does not make the employer an insurer."

In the *Rogers* v. *Missouri Pacific Rd. Co., case, supra,* there is an apparent reversal by the court of its position stated in *Tennant, Admx.,* v. *Peoria & Pekin Union Ry. Co., supra,* and quoted above, wherein a "proximate cause in whole or in part" is necessary before recovery by an injured employee of the railroad. In the *Rogers* v. *Missouri Pacific Rd. Co.,* case, the court, after rejecting the rule of proximate causation, said, with regard to this question:

"* * * That is language of proximate causation which makes a jury question dependent upon whether the jury may find that the defendant's negligence was the sole, efficient, producing cause of injury.

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the

injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or *in part*' to its negligence. (Emphasis added.)

"The law was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence.

"The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference."

We do know by overwhelming testimony that the pool of stagnant, vermin-infested water was alongside the Baltimore and Ohio tracks for many years prior to the alleged "bite" suffered by Mr. Gallick. We know, by definite evidence, that insects were in and about this stagnant pool. There is a conflict in the testimony (resolved against Baltimore and Ohio) as to whether any insect of the size described by the injured employee might infest this pool, and which insect might "bite" a man.

We have sufficient credible evidence to conclude, as did the jury, that Mr. Gallick suffered a "bite" on railroad property

by some insect while working for that railroad. We have an abundance of testimony that from such "bite" severe consequences to Mr. Gallick have ensued.

We can, with reason, say that, to maintain for a period of years a stagnant, vermin-infested pool of water on and over which insects gather, on property where its employees are required to work, could furnish the gravamen of an offense under the Federal Employers' Liability Act.

No similar "bite" or other insect bites were ever complained about, although complaint about the general unsanitary condition at the location of the pool was made to the railroad.

Throughout all the cases involving employer liability, in cases such as we have before us, the United States Supreme Court has held that a right to recover is established if, from the facts proved, negligence and its causal relationship to the injury and damage may reasonably be inferred; a jury question is presented if, with reason, "the conclusion may be drawn that negligence of the employer played any part at all in the injury."

From the facts heretofore set forth, it is obvious that the plaintiff's case, if it is to be sustained, must rest upon inferences to be drawn from the evidence. There is no direct evidence that the existence of the unidentified bug at the time and place had any connection with the stagnant and infested pool.

We observe that proof is the effect of evidence—the establishment of a fact by evidence—and in litigation there may be evidence which does not amount to proof. When there is neither direct evidence, nor reasonable inferences to be drawn from evidence, whether direct or circumstantial, a conclusion based upon such absence of evidence or reasonable inference is mere conjecture, and the drawing of a further inference from conjecture does not amount to proof. In proving a defendant's culpability, the proof must show that the tort is distinctly traceable as one of the efficient antecedents of the damages, and has a share in subjecting plaintiff to injury.

The observation made above refers only to legal cause. We are not here concerned with cause in the so-called "philosophic sense," for the reason that the causes of causes are infinite.

If the plaintiff's case is to be sustained, we must infer that

this undescribed (except as to size and biting qualities) insect or bug had been attracted to the area in which the plaintiff was hurt by the stagnant pool, and that its bite caused the plaintiff's condition; that the pool created conditions and influences which helped to incubate or furnish an environment for the bug, whose bite was poisonous to the plaintiff; or, that the insect, having traveled from other areas, became contaminated or infected by the pool with a substance injurious to man, and that this substance infected the plaintiff when bitten.

The law is plain that, before the question of causation can be submitted to a jury, the trial judge must decide a preliminary question—i. e., whether from the evidence a jury could reasonably find the existence of a causal relation. If the judge decides in the affirmative, it will then be for the jury to say whether they do find. In other words, the judge must say whether on the evidence, a causal relation may be reasonably inferred. If the judge rules that it may be so inferred, the jurors then must say whether, from the evidence, the causal relation is inferred by them.

The question of causation should not get to the jury, and the judge should direct a verdict for the defendant, unless the court is of the opinion that a jury can reasonably find that the defendant's tort was an efficient cause of the damage to the plaintiff *and not a mere antecedent fact.*

As we view the record before us, we have a chain of possibilities that the negligence of the defendant might have shared in subjecting the plaintiff to damage and injury, but the proof of a legal causal connection between the negligence and the damage falls short of that required for the consideration of a jury.

Whether the insect causing the damage had any connection with the pool of stagnant water on the defendant's premises, or whether it came from the nearby putrid mouth of the Cuyahoga River, or from weeds, or unsanitary places situated on property not owned or controlled by the railroad, presents only a series of guesses and speculations, which speculations make a chain of causation too tenuous to support a conclusion of liability on the part of the railroad.

We determine, therefore, that, where there is, as here, only

a guess or speculation of a causal connection between the negligence of the employer and the injury of an employee, no liability attaches, and a judgment based upon such speculation cannot be sustained.

All other claimed errors have been examined, and we find none prejudicial to the rights of the appellant.

The judgment herein is reversed as contrary to law, and final judgment will be entered for the railroad-appellant.

Reversed and final judgment for the appellant.

DOYLE, P. J., and GRIFFITH, J., concur.