## GALLICK *v.* BALTIMORE & OHIO RAILROAD CO.

No. 76.  Argued December 10, 1962.—
Decided February 18, 1963.

*Marshall I. Nurenberg* argued the cause for petitioner. With him on the briefs were *A. H. Dudnik* and *Meyer A. Cook.*

*Alexander H. Hadden* argued the cause for respondent. With him on the briefs were *Raymond T. Jackson* and *Russell E. Leasure.*

MR. JUSTICE WHITE delivered the opinion of the Court.

Upon a special verdict of the jury, the Common Pleas Court of Cuyahoga County, Ohio, entered judgment awarding damages to petitioner in this Federal Employers' Liability Act[1] suit. The Court of Appeals reversed, 173 N. E. 2d 382, and the Ohio Supreme Court refused further appellate review, 172 Ohio St. 488, 178 N. E. 2d 597, making the decision of the intermediate appellate court the final judgment rendered by the state courts. This Court granted certiorari, 369 U. S. 848, to consider the question whether the decision below improperly invaded the jury's function. We have concluded that the decision below is erroneous and must be reversed.

Petitioner was a spotting crew foreman working on or about August 10, 1954, along the respondent railroad's right of way in the Cuyahoga River "flats" section of Cleveland, Ohio. At the particular stretch of roadbed where petitioner was working on that afternoon, there had been for many years a pool of stagnant water, in and about which were dead and decayed rats and pigeons, or portions thereof. Insects had been seen on, over, and about this stagnant pool, and the evidence showed, as the Court of Appeals stated, that respondent had long been aware of the fetid condition of this pool. 173 N. E. 2d, at 383. While he was temporarily working near the pool, petitioner experienced a bite on his left leg just above the knee. He grasped the spot with his hand and felt an object under his trousers which seemed to be a large insect and which, when he crushed it, dropped out of his trouser leg. The wound subsequently became infected. The infection failed to respond to medical treatment, and worsened progressively until it spread throughout petitioner's body, creating pus-forming lesions and eventually necessitating the amputation of both his legs. None of the

---

[1] 35 Stat. 65, as amended, 45 U. S. C. § 51.

doctors who treated and studied petitioner's case could explain the etiology of his present condition, although some of them diagnosed or characterized it as "pyoderma-gangrenosa, secondary to insect bite." See *id.*, at 384.

The Federal Employers' Liability Act makes railroads liable in damages to any employee suffering "injury or death resulting in whole or in part from the negligence of . . . [the] carrier, or by reason of any defect or insufficiency, due to its negligence, in its . . . roadbed . . . or other equipment." 45 U. S. C. § 51. In his complaint petitioner alleged respondent's negligence both in permitting the stagnant pool to accumulate dead vermin and attract insects, and in its furnishing a defective and unsafe place for petitioner's work. The respondent denied any negligence and contended that if petitioner's serious injuries resulted from an insect bite sustained while working on railroad property, such consequences "were beyond the realm of reasonable probability or foreseeability, with the result that no duty arose" to exercise due care to protect petitioner "from any such risk." 173 N. E. 2d, at 384.

After a lengthy trial, the court, pursuant to the State's special verdict statute, Ohio Rev. Code, § 2315.15, under which no general verdict is rendered by the jury, submitted some two dozen interrogatories to the jury and charged them as to what it deemed the applicable law of negligence. The special verdict of the jury, to the extent that it is relevant here, follows (answers italicized):

"10. On approximately August 10, 1954, was plaintiff bitten by an insect? *Yes.*

.        .        .        .        .

"13. Did the defendant B & O provide the plaintiff Mr. Gallick a reasonably safe place to work under the facts and circumstances existing at the time? *Jury can't decide on this question.*

"14. [D]id the defendant B & O know that by permitting the accumulation of said pool of stagnant

water, dead pigeons, dead rats, bugs, and vermin would be attracted to said area? *Yes*.

"15. If the answer to 14 is yes, did the defendant B & O know that its employees would have to work in this area? *Yes*.

"16. Was the defendant negligent in one or more of the particulars alleged in the petition? *Yes*.

"17. If the answer to Question 16 is yes, indicate in the words of the petition the acts or omissions which constitute defendant's negligence. *There existed a pool of stagnant water on the premises in the possession of and under the control of defendant into which was accumulated dead pigeons, rats, and various forms of bugs and vermin.*

"18. Was the illness or diseases from which Mr. Gallick now suffers caused in whole or in part by an insect bite sustained by him on defendant B & O's premises? *Yes*.

"19. Were the injuries to the plaintiff proximately caused . . . by . . . the acts or omissions of the defendant? *Yes*.

"20. [W]as there any reason for the defendant B & O to anticipate that such [maintaining stagnant, infested pool] would or might probably result in a mishap or an injury? *No*.

"21. Is there a proximate causal relationship to the stagnant water, the dead rats, the dead pigeons, the insect bite, and the present physical condition of the plaintiff? *Yes*.

"22. If the answer to Question 21 is yes, was it within the realm of reasonable probability or foreseeability of the defendant B & O to appreciate this proximate causal relationship between the stagnant water, the dead rats, the dead pigeons, the insect bite and the present physical condition of the plaintiff? *No*."

The trial court entered judgment for petitioner and respondent appealed, assigning as error various trial rulings, none of which the Court of Appeals found "prejudicial to the rights of the appellant," except the fundamental one, in the court's view, that judgment for respondent should have been entered on a directed verdict because the trial evidence was insufficient to support a judgment for petitioner.[2] The court said that the evidence showed that an insect bit petitioner and caused his severe injuries. It also found that "to maintain for a period of years a stagnant, vermin-infested pool of water on and over which insects gather," on property where the railroad's employees were required to work "could furnish the gravamen of an offense [sic] under the Federal Employers' Liability Act." 173 N. E. 2d, at 387. The court emphasized, however, that there was no "direct evidence that the existence of the unidentified bug at the time and place had any connection with the stagnant and infested pool," or had become infected by the pool with the substance that caused petitioner's infection, evidence which would negative the alternative possibility that the insect had emanated from "the nearby putrid mouth of the Cuyahoga River, or from weeds, or unsanitary places situated on property not owned or controlled by the railroad." The Court of Appeals therefore deemed the evidence merely "a series of guesses and speculations . . . a chain of causation too tenuous to support a conclusion of liability." *Id.,* at 388. "[W]e have a chain of possibilities that the negligence of the defendant might have shared in subjecting the plaintiff to damage and injury, but the proof of a legal causal connection between the negligence and the damage falls short of

---

[2] For the same reason the Court of Appeals found error in the trial court's refusal to enter a judgment n. o. v. See Journal Entry, R. 629.

that required for the consideration of a jury." *Ibid.* Accordingly, it reversed the judgment of the Court of Common Pleas and entered final judgment for respondent.

## I.

We think that the Court of Appeals improperly invaded the function and province of the jury in this Federal Employers' Liability Act case. According to the Court of Appeals, the break in the causal chain that turned it into a mere "series of guesses and speculations" was the want of evidence from which the jury could properly conclude that respondent's fetid pool had had something to do with the insect that bit petitioner. The only question was whether or not the insect was from or had been attracted by the pool. We hold that the record shows sufficient evidence to warrant the jury's conclusion that petitioner's injuries were caused by the acts or omissions of respondent.

As the Court of Appeals stated, "insects were seen on, over and about this stagnant pool." According to petitioner's undisputed testimony, he stood near the pool for about a half a minute; then he started to walk away and was bitten on the leg after he took a few steps, perhaps one or two seconds later. Petitioner also testified, on cross-examination, that he had at times seen insects of about the same size as that which bit him crawling over the dead rats and pigeons in the stagnant pool. And on cross-examination by respondent two medical witnesses testified that stagnant, rat-infested pools breed and attract insects.[3] Moreover, the jury specifically found that the pool accumulated and attracted bugs and vermin.

---

[3] The Court of Appeals emphasized the fact that no similar bite was ever complained about, as a factor in gauging the probability that the actual causal chain corresponded to petitioner's theory of the case, 173 N. E. 2d, at 387; it accepted as supported by "sufficient credible evidence" the finding that an insect bit petitioner, but it disagreed

The Court of Appeals erred in demanding either "direct evidence that the existence of the unidentified bug at the time and place had any connection with the stagnant and infested pool" or else more substantial circumstantial evidence than that adduced here "that the pool created conditions and influences which helped to incubate or furnish an environment for the bug . . . or that the insect, having traveled from other areas, became contaminated or infected by the pool." 173 N. E. 2d, at 388. Under the ruling cases in this Court the evidence present was sufficient to raise an issue for the jury's determination as to whether the insect emanated from the pool.

In *Tennant* v. *Peoria & P. U. R. Co.*, 321 U. S. 29, one of the leading cases, the Court granted certiorari "because of important problems as to petitioner's right to a jury determination of the issue of causation." There was no direct evidence of how the decedent was killed. There was evidence that the respondent railroad had been negligent or careless in failing to ring a warning bell before moving an engine, and evidence that the victim was killed by being run over by a train. The question of how the victim met his death was susceptible to various answers, all somewhat conjectural because of the want of direct evidence, some of which supported petitioner's claims and others respondent's. The Court of Appeals set aside a jury verdict for petitioner for failure of the evidence to make out proximate cause, but this Court reversed:

> "It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that

with the finding that pool and insect bite were related. Although the record does not show that any complaint was ever made to respondent about insect bites, petitioner testified that he had complained to the section foreman about the vermin-infested pool several times and another witness testified that he was bitten by an insect near it in or about September 1954.

the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. *Washington & Georgetown R. Co.* v. *McDade,* 135 U. S. 554, 571, 572; *Tiller* v. *Atlantic Coast Line R. Co., supra,* 68; *Bailey* v. *Central Vermont Ry.,* 319 U. S. 350, 353, 354. That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." 321 U. S., at 35.

Later Federal Employers' Liability Act cases involving sufficiency of the evidence on causation where several explanations are plausible follow the teaching of the *Tennant* case. In *Schulz* v. *Pennsylvania R. Co.,* 350 U. S. 523, a tug fireman was drowned in undetermined circumstances arising from his "work on . . . dark, icy and undermanned boats"; the lower court said: "There is some evidence of negligence, and there is an accidental death. But there is not a shred of evidence connecting the two." This Court held that there was sufficient evidence of causation to require submission of the case to the jury. *Lavender* v. *Kurn,* 327 U. S. 645, was another Federal Employers' Liability Act case in which it was uncertain which of various alternative explanations

for the cause of the injury was correct. Petitioner's theory was that a mail-hook protruding from a train had hit the victim, while respondent's theory was that an unknown murderer was responsible. Both theories were plausible; the jury found for petitioner, but the lower court reversed for insufficient evidence. This Court reversed on the ground that the lower appellate court had committed "an undue invasion of the jury's historic function."

These cases, as does the instant case, all involved the question of whether there was evidence that *any* employer negligence caused the harm, or, more precisely, enough to justify a jury's determination that employer negligence had played *any* role in producing the harm. In the more recent case, *Rogers* v. *Missouri Pac. R. Co.*, 352 U. S. 500, one of the questions was whether, given the antecedent negligence or carelessness of the employer in maintaining a roadside surface with loose, slippery gravel instead of a firm, flat footing, the causal impact of such neglectfulness was negatived by the subsequent or concurrent negligence of the employee in failing to pay attention to what he was supposed to be doing. Although the context is thus somewhat dissimilar to the present one, the language used in the opinion is most apposite:

> "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part . . . in producing the injury . . . . It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes . . . . Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury

or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities." 352 U. S., at 506–507.

The facts before the jury fall within this standard and the Court of Appeals therefore erred in refusing to accept the jury's verdict.

## II.

Although we have concluded that the jury could properly find that there was a causal relationship between the railroad's negligence and petitioner's injuries, that does not end the case.[4] Respondent makes the further argument that the judgment under review may be sustained on the alternative ground, not accepted by the Court of Appeals, that the injury was not reasonably foreseeable, and that therefore there was no negligence.

We agree with respondent that reasonable foreseeability of harm is an essential ingredient of Federal Employers' Liability Act negligence. *Inman* v. *Baltimore & O. R. Co.*, 361 U. S. 138, 140; see *Brady* v. *Southern R. Co.*, 320 U. S. 476, 483–484; *Tiller* v. *Atlantic C. L. R. Co.*, 318 U. S. 54, 67; *Ringhiser* v. *Chesapeake & O. R. Co.*, 354 U. S. 901, 903, 905 (dissenting opinions); *Rogers* v. *Missouri Pac. R. Co.*, 352 U. S. 500, 503; cf. *Morales* v. *City of Galveston*, 370 U. S. 165, 171; *Dalehite* v. *United States*, 346 U. S. 15, 42.[5] But this requirement has been satisfied in the

---

[4] See *B. F. Goodrich Co.* v. *United States*, 321 U. S. 126, 127; *United States* v. *American R. Exp. Co.*, 265 U. S. 425, 435; *Frey & Son, Inc.*, v. *Cudahy Packing Co.*, 256 U. S. 208, 210.

[5] *Kernan* v. *American Dredging Co.*, 355 U. S. 426, was concerned with the breach of a statutory or regulatory duty and does not control or purport to define the content of nonstatutory or nonregulatory duties amounting to negligence for the purposes of the Federal Employers' Liability Act.

present case by the jury's findings (Nos. 10, 14–19, 21) of negligence in maintaining the filthy pool of water. The jury had been instructed that negligence is the failure to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances; [6] and that defendant's duty was measured by what a reasonably prudent person would anticipate as resulting from a particular condition— "defendant's duties are measured by what is reasonably foreseeable under like circumstances"—by what "in the light of the facts then known, should or could reasonably have been anticipated." [7] Thus when the jury found these facts: petitioner was bitten by an insect; the insect bite caused illness or disease and led to petitioner's present physical condition; the stagnant pool attracted bugs and vermin and was responsible for the insect bite and the injuries to petitioner; and respondent knew that the accumulation of the pool of water would attract bugs and

---

[6] "Negligence is sometimes said to be a failure to observe for the protection of the rights of others that degree of care, precaution, and vigilance which the circumstances justly demand, and sometimes, in other words, it is said that negligence is the failure to observe ordinary care, and ordinary care is that degree of care which people of ordinary prudence and sagacity use under the same or similar circumstances. What would ordinarily prudent persons have done under like circumstances?"

[7] "The B & O in this case was not required to guard against that which a reasonably prudent person, under the circumstances, would not anticipate as likely to happen. If a person has no reasonable ground to anticipate that a particular condition . . . would or might result in a mishap and injury, then the party is not required to do anything to correct such a condition. You must apply this rule to this case. . . . Defendant's duties are measured by what is reasonably foreseeable under like circumstances. . . . In measuring the B & O's conduct here, the point of view to be taken should be the view before the mishap occurred, to see what, in the light of the facts then known, should or could reasonably have been anticipated. And you must follow this rule in this case."

vermin to the area—it is clear that the jury concluded that respondent should have realized the increased likelihood of an insect's biting petitioner while he was working in the vicinity of the pool.

Respondent places reliance, however, upon two special interrogatories returned by the jury. In one, No. 22, the jury found that respondent could not foresee that the stagnant pool would set into being a chain of events that would culminate in petitioner's present physical condition—loss of two limbs, widespread ulcerations, and permanent disability. In the other, No. 20, the jury found that respondent did not have reason to anticipate that its maintenance of the pool "would or might probably result in a mishap or an injury." It is said that interrogatories Nos. 20 and 22 are findings of no foreseeability, and that there is therefore a fatal inconsistency among the jury's findings and that they cancel one another out, necessitating a judgment for the defendant, or at least a new trial. See *Freightways, Inc.,* v. *Stafford,* 217 F. 2d 831, 835 (C. A. 8th Cir.); Fed. Rules Civ. Proc. 49 (b). See also *Larrissey* v. *Norwalk Lines,* 155 Ohio St. 207, 214–215, 98 N. E. 2d 419, 423–424; *Klever* v. *Reid Bros.,* 151 Ohio St. 467, 476, 86 N. E. 2d 608, 612. But it is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them: "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Atlantic & Gulf Stevedores, Inc.,* v. *Ellerman Lines, Ltd.,* 369 U. S. 355, 364. We therefore must attempt to reconcile the jury's findings, by exegesis if necessary, as in *Arnold* v. *Panhandle & S. F. R. Co.,* 353 U. S. 360; *McVey* v. *Phillips Co.,* 288 F. 2d 53 (C. A. 5th Cir.); *Morris* v. *Pennsylvania R. Co.,* 187 F. 2d 837 (C. A. 2d Cir.) (collecting authorities), before we are free to disregard the jury's special verdict and remand the case for a new trial.

We do not believe that the conclusion of fatal inconsistency is compelled by these findings. In the first place, the jury might not have equated a foreseeable insect bite with a mishap or injury. The trial judge more than once in his instructions separated an "insect bite" from "injury," "infection," "illness" or "disease." The answer to Question 20 thus might mean simply that while an insect bite was foreseeable, there was no reason to anticipate a "mishap" or "injury" from such a bite. This answer therefore falls in the same category as the jury's response to Question 22, where the jury found that there was no reasonably foreseeable causal relationship between the insect bite and the present physical condition of the plaintiff. It is widely held that for a defendant to be liable for consequential damages he need not foresee the particular consequences of his negligent acts: assuming the existence of a threshold tort against the person, then whatever damages flow from it are recoverable. See, *e. g.*, *Boal* v. *Electric Battery Co.*, 98 F. 2d 815, 819 (C. A. 3d Cir.); *Koehler* v. *Waukesha Milk Co.*, 190 Wis. 52, 57–63, 208 N. W. 901, 903–905 (collecting authorities); Restatement, Torts, § 435; 2 Harper and James, Torts, 1139–1140; Prosser, Torts, 260 (2d ed.); Seavey, Mr. Justice Cardozo and the Law of Torts, 48 Yale L. J. 390, 402–403.[8] And we have no doubt that under a statute where the tortfeasor is liable for death or injuries in producing which his

---

[8] "If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable." Restatement, Torts, § 435. "In these and like cases of what well may be called direct consequences, the courts generally hold defendant liable for the full extent of the injury without regard to foreseeability." 2 Harper and James, Torts, p. 1140. "There is almost universal agreement upon . . . liability for unforeseeable consequences when they follow an impact upon the person of the plaintiff." Prosser, Torts, 260.

"negligence played any part, even the slightest" (*Rogers v. Missouri Pac. R. Co.,* 352 U. S. 500, 506) such a tort-feasor must compensate his victim for even the improbable or unexpectedly severe consequences of his wrongful act. Cf. *Kernan* v. *American Dredging Co.,* 355 U. S. 426; *Coray* v. *Southern Pac. Co.,* 335 U. S. 520; *Lillie* v. *Thompson,* 332 U. S. 459. The answers to these two interrogatories are therefore not controlling for Federal Employers' Liability Act purposes.

In the second place, in deciding whether respondent had reason to anticipate and foresee any harm to petitioner, the trial court instructed the jury to take into account "the past experience respecting the location and conditions in question" and the fact "that no occurrence of the kind here alleged either occurred, or was known by defendant to have occurred, at or near this place before August of 1954." [9] The jury thus might have determined that, since there had been no similar incidents at this pool in the past, the respondent had no specific "reason" for anticipating a mishap or injury to petitioner—a far too narrow a concept of foreseeable harm to negative negligence under the Federal Employers' Liability Act. Thus there is a second and independent ground for the court to have put aside No. 20 as immaterial. Looking at No. 20 in the context of the charge and the total context of the special verdict, see *McVey* v. *Phillips Co.,* 288 F. 2d 53, 59 (C. A. 5th Cir.); *Halprin* v. *Mora,* 231 F. 2d 197, 201

---

[9] "In measuring the B & O's duty to anticipate—that is, in considering how much and how far the defendant ought to have gone in foreseeing and guarding against possible mishaps and dangers—the past experience respecting the location and conditions in question may properly be drawn upon. It is entirely proper in this case to take into account the fact . . . that no occurrence of the kind here alleged either occurred, or was known by defendant to have occurred, at or near this place before August of 1954, as . . . indicating what the defendant here should reasonably have foreseen for the future."

(C. A. 3d Cir.), we cannot assign it sufficient weight to warrant overturning the judgment of the trial court entered pursuant to the jury's special verdict.

We.have examined respondent's other contentions and found them without merit, including the contention that there was insufficient evidence to support the finding of negligence. The Court of Appeals erred in depriving petitioner of the judgment entered upon the special verdict of the jury. *Arnold* v. *Panhandle & S. F. R. Co.,* 353 U. S. 360. The judgment of the Ohio Court of Appeals is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE HARLAN, dissenting.

Heartrending as the petitioner's accident has turned out to be, I think this case should not have been brought here. It involves no unsettled questions of federal law calling for decision by this Court, nor, in any acceptable sense, a departure by the state courts from legal principles already decided requiring this Court's intervention. The case thus does not qualify for review under Rule 19.* See the dissenting opinion of Mr. Justice Frankfurter in *Rogers* v. *Missouri Pacific R. Co.,* 352 U. S. 500, 524, and the separate opinion of this writer, p. 559. The case has

---

*In pertinent part, Rule 19 provides:

"1. A review on writ of certiorari is not a matter of right, but of sound judicial discretion, and will be granted only where there are special and important reasons therefor. The following, while neither controlling nor fully measuring the court's discretion, indicate the character of reasons which will be considered:

"(a) Where a state court has decided a federal question of substance not theretofore determined by this court, or has decided it in a way probably not in accord with applicable decisions of this court. . . ."

necessarily required an inordinate amount of time, which the Court can ill afford in the present state of its docket.

Reaching the merits, however, *id.*, pp. 559–562, I would affirm the judgment below. I agree with my Brothers STEWART and GOLDBERG as to the inconsistency of the jury's verdict. But in addition, I cannot say that the view of the record taken by the state courts, in holding that the evidence on the issue of causation was insufficient to make a case for the jury, was an arbitrary or unreasonable one. The opinion of the Ohio Court of Appeals evinces a conscientious effort to follow this Court's decisions under the Federal Employers' Liability Act, and more particularly the broad pronouncements made in the *Rogers* case, *supra.* On this score the Court's reversal seems to me no more than an exercise in second-guessing the state court's estimate of the record.

From another standpoint this case does have significance. It affords a particularly dramatic example of the inadequacy of ordinary negligence law to meet the social obligations of modern industrial society. The cure for that, however, lies with the legislature and not with the courts.

MR. JUSTICE STEWART and MR. JUSTICE GOLDBERG, dissenting.

We cannot agree with the Court's disposition of this case, in view of the jury's explicit finding that injury to the petitioner was not reasonably foreseeable. As the Court correctly states, "foreseeability of harm is an essential ingredient of Federal Employers' Liability Act negligence." Interrogatory No. 20 was unambiguous: "[W]as there any reason for the defendant B & O to anticipate that such [maintenance of a stagnant, infested pool] would or might probably result in a mishap or an injury?" In our view the jury's answer to this interrogatory, find-

ing that the railroad had no reason here to anticipate mishap or injury, was irreconcilably inconsistent with its finding of negligence in answer to Interrogatory No. 16, and a new trial should have been ordered.

The Court agrees that the answer to Interrogatory No. 20 was inconsistent with the jury's answer to Interrogatory No. 16. But instead of concluding that this inconsistency cancels out the several findings involved and thus voids the entire verdict, the Court undertakes to search for an alternative meaning to be given to Interrogatory No. 20 in order to bring it into line with the special finding which favors the petitioner. The Court seeks support for this Procrustean exercise in the often-repeated admonition that courts should make every effort "to reconcile the jury's findings, by exegesis if necessary, . . . before we are free to disregard the jury's special verdict and remand the case for a new trial." We think this generally sound guideline is misapplied in the present case.

The duty of courts to attempt to reconcile inconsistent jury findings has emerged from cases in which the jury answered special interrogatories *and also* returned a general verdict. See, *e. g., Arnold* v. *Panhandle & S. F. R. Co.,* 353 U. S. 360.[1]

The inconsistencies which the courts have dealt with in these cases were inconsistencies between a general verdict for one of the parties and seemingly conflicting special findings in answer to added interrogatories. The purpose of such an effort has been to preserve, if possible,

---

[1] *Atlantic & Gulf Stevedores, Inc.,* v. *Ellerman Lines, Ltd.,* 369 U. S. 355, is not to the contrary. In that case it was held that the Court of Appeals had erroneously synthesized a conflict between answers to special interrogatories, when no conflict appeared on the face of the several answers, and none was compelled by the theories underlying the several questions.

the integrity of the jury's general verdict. As one leading commentator has explained, in the context of Federal Rule 49 (b),

> "The power to enter judgment on findings consistent with each other but inconsistent with the general verdict is a constitutional one and does not violate the Seventh Amendment since the jury's findings of fact are not being re-examined but, as a reasonable regulation of practice, their more specific findings of fact are allowed to control over their general conclusion embodied in the general verdict. Every reasonable intendment should, however, be indulged in favor of the general verdict in an effort to harmonize it with the answers to the interrogatories, and the latter should be held controlling only 'where the conflict on a material question is beyond reconciliation on any reasonable theory consistent with the evidence and its fair inferences.' Of course, if the answers are inconsistent with each other, and one or more with the general verdict, the court cannot enter judgment upon the basis of any of the findings, and as provided by the Rule, should not direct the entry of judgment at all, but should return the jury for further deliberation or should order a new trial." 5 Moore, Federal Practice, ¶ 49.04.

Although the Court several times mentions a "special verdict" of the jury, this refers to no more than the answers given to the interrogatories. The fact is that the jury returned no general verdict for either party. The jury simply answered a list of 23 specific questions, and their answers neither were, nor under any fair reading can be made, consistent. Nothing in the structure of the jury's several findings marks the answer to Interrogatory No. 20 as the one which is obviously out of line. It would be as plausible—and as incorrect—to say that the finding

in response to Interrogatory No. 16 must be read to conform to the answer to Interrogatory No. 20, and to enter judgment for the respondent.[2]

We agree with the Court, and hence disagree with our Brother HARLAN, about the sufficiency of the evidence on the issue of causation to make a case for the jury under the standards laid down by this Court, *e. g.*, *Rogers* v. *Missouri Pac. R. Co.*, 352 U. S. 500. We also agree with the Court that no inconsistency with a finding of negligence arises from the jury's answer to Interrogatory No. 22, wherein it found that the railroad had no reason to anticipate the extent of the petitioner's injuries. In our view the answer to Interrogatory No. 22 was simply immaterial, because the interrogatory asked, in effect, whether the *extent* of the petitioner's injuries was foreseeable—an issue irrelevant to the merits of the case, as the Court's opinion aptly points out.

Our disagreement with the Court arises, therefore, only from its treatment of the jury's answer to Interrogatory No. 20. Since, as the Court recognizes, foreseeability of harm (as distinguished from foreseeability of the extent of injury covered by Interrogatory No. 22) is the test of liability in FELA cases, the jury's answer to Interrogatory No. 20 is plainly and irreconcilably inconsistent with its answer to Interrogatory No. 16.[3] Because the jury in

---

[2] Indeed, were it proper to indulge in a process of speculation to derive meaning for one answer from the content of others—as the majority does to support its conclusion that the answer to Interrogatory No. 16 is the overriding one—support for preferring the answer to Interrogatory No. 20 and entering judgment for respondent could be gained from the jury's response to Interrogatory No. 13, wherein it could not agree on whether petitioner had been furnished an unsafe place to work, thereby further contradicting the existence of negligence which was found in answer to Interrogatory No. 16.

[3] Reference to the court's oral instructions to the jury concerning Interrogatories Nos. 16 and 20 additionally negatives the Court's attempted reconciliation of the jury's answers to these questions. The

answer to No. 16 found that the railroad was negligent, and yet at the same time specifically found in answer to No. 20 that the mishap was unforeseeable, it is, in our view, impossible to enter a judgment for either party based on these findings. By undertaking to reconcile irretrievably conflicting findings of the jury, the Court, we think, has made the same error that it correctly attributes to the Ohio Court of Appeals—it has invaded the province of the jury under this federal statute. We would avoid such an intrusion by ordering that the cause be put to another jury.

For these reasons we would set aside the judgment and remand this case for a new trial.

---

description of negligence in No. 16 was merely a statement cast in terms of a "failure to observe ordinary care," without any suggestion that the "failure to observe for the protection of the rights of others that degree of care, precaution, and vigilance which the circumstances justly demand" had to be a failure in relation to this plaintiff. In contrast to the negligence in the abstract which the jury can be said to have found in answer to Interrogatory No. 16, the judge instructed with reference to Interrogatory No. 20 that "In answering this question you are instructed that it is a matter of law [that] the defendant B & O is only to be held to a reasonable degree of care, and not to the performance of practicable impossibilities, but that where the proofs justify with reason the conclusion that the employer's negligence played any part, even the slightest, introducing [*sic*—in producing?] the injury, then the employer has a duty to anticipate that such injury would or might probably result." This instruction dealt with the defendant railroad's duties as an employer in relation to the petitioner in a manner which the instruction concerning Interrogatory No. 16 had not. Moreover, it was, if anything, unduly favorable to petitioner in its equation of foreseeability with causation in fact, and yet the jury answered Interrogatory No. 20 in the negative.