Robert MELTON, Plaintiff–Respondent,

v.

**ILLINOIS CENTRAL GULF RAIL-ROAD CO., Defendant–Appellant.**

No. 53830.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 6, 1988.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
Jan. 4, 1989.

Application to Transfer Denied
Feb. 14, 1989.

**322**

Frank N. Gundlach, Ann E. Buckley, St. Louis, for defendant-appellant.

Don B. Sommers, Prudence W. Kramer, St. Louis, for plaintiff-respondent.

STEPHAN, Judge.

Illinois Central Gulf Railroad Company ("Railroad") appeals from the judgment entered in favor of respondent Robert Melton for injuries he sustained during his employment as a railroad engineer. Melton brought his action against Railroad under the Federal Employers' Liability Act of 1908, 45 U.S.C. § 51–60 (1982) ("FELA"). The jury returned a verdict in favor of Melton for $575,000.00 upon which the judgment appealed from was entered. We affirm the judgment of the trial court.

The accident occurred on July 26, 1985, at the Boothby siding between Benton and Rust in southwest Illinois about one hundred miles from St. Louis. Three teenagers had broken a lock and tampered with a switch diverting the railroad tracks from the main track to a single track alongside. They also bent the "target" sign at the switch with the result that someone on an approaching train could not tell that the switch was not lined for the main track. Melton, a fifty-six year old engineer for Railroad, was running a train down the main line where the vandalism had occurred when the train ran off the main line onto the side track. The crew jumped out the rear of the locomotive onto the main track to escape collision with train cars parked on the single siding. Melton broke his left wrist and left ankle, bruised both knees, and injured his right hand.

Railroad seeks reversal of the judgment on the following grounds of alleged trial court error: first, failure to dismiss the action for forum non conveniens; second, submitting the action absent evidence of any negligence by Railroad or of foreseeability by it of the acts of vandalism; and third, refusing to allow Railroad's offer of proof that Melton had received disability payment under the Railroad Retirement Act of 1937, 45 U.S.C. § 231 (1982), entitling Railroad to a setoff of those contributions made to the fund by Railroad in Melton's behalf against the jury award to Melton.

■ The first issue raised by Railroad is whether the trial court abused its discretion in refusing to grant Railroad's motion to dismiss Melton's action on the grounds of forum non conveniens. In *State ex rel. Chicago, Rock Island and Pacific Railroad v. Riederer*, 454 S.W.2d 36, 39 (Mo. banc 1970), our supreme court listed the following six factors for consideration of the applicability of the doctrine of forum non conveniens: 1) place of accrual of the cause of action; 2) location of witnesses; 3) the residence of the parties; 4) any nexus with the place of suit; 5) the public factor of the convenience to and burden upon the court; and 6) the availability to plaintiff of another court with jurisdiction of the cause of action which affords him a forum for his remedy.

Our supreme court more recently observed in *Besse v. Missouri Pacific Railroad*, 721 S.W.2d 740 (Mo. banc 1986), *cert. denied* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987), while the plaintiff may initially select the forum by filing suit in any venue allowed by law, a suit is subject to dismissal if it is filed in a forum which is manifestly inconvenient. 721 S.W.2d at 742. The supreme court iterated the six factors set out in *Riederer* and commented that their consideration necessarily involves a weighing of those factors, so that the decision is one largely committed to the trial court's discretion. *Besse*, 721 S.W.2d at 741–42. In the exercise of that discretion, cases having no tangible relationship to Missouri should be dismissed. *Id.*

Keeping in mind the factors enumerated in *Riederer*, Railroad emphasizes that the accident occurred at Boothby siding in

Franklin County, Illinois, approximately one hundred miles from St. Louis; that Melton resided in Centralia, Illinois, about sixty-eight miles from St. Louis; that Railroad's home office is in Chicago, Illinois; that the three teenagers who broke the lock and threw the switch causing the accident live in or near Benton, Illinois, and could not be subpoenaed or joined as third party defendants in St. Louis, Missouri; that Melton's treating physician maintained his office in Centralia, Illinois; and that all the fact witnesses lived in Illinois.

Railroad asserts that the only connections to the City of St. Louis are that Melton's attorney has an office in St. Louis and that, at the time suit was filed, Railroad owned and operated trains that periodically came into St. Louis. Railroad acknowledges, however, that both Melton's and Railroad's examining physicians who testified at trial maintained their offices in St. Louis County, as did Railroad's expert witness, an accountant.

In oral argument, Railroad conceded that no record was made concerning the anticipated time to get to trial. We note the court minutes in the legal file reflect the case was tried approximately one year after Railroad was served. From this, we surmise that the public factor of the convenience to and burden upon the court, the fifth factor listed in *Riederer*, had little consequence here.

Finally, Railroad mentions that the more convenient forum was in Illinois, either in Centralia where Melton lived or in Benton where the accident occurred. Railroad reasons that, had the action been brought in either Centralia or Benton, Railroad could have subpoenaed or impleaded the three teenagers whose vandalism occasioned the accident.

Our review of the factors outlined by Railroad dispels any finding that the trial court abused its discretion in refusing to dismiss Melton's action for forum non conveniens. Nothing in the record compels our conclusion that Melton filed his action in a forum which is "manifestly inconvenient". *Besse*, 721 S.W.2d at 742. Travel on the part of interested persons would have been required wherever the action was brought. The witnesses, the site of the accident, and the residence of parties and of treating and examining physicians were all scattered. Of the witnesses called by Railroad, only three testified by deposition; the rest appeared for trial in person. Railroad demonstrated no inability to secure the presence of witnesses to testify at trial in its behalf.

The crux of Railroad's claim of forum non conveniens is that Railroad was prejudiced by its inability to either subpoena or implead as third party defendants the three teenagers who had vandalized the Railroad's equipment. Although Railroad read into evidence the depositions of these three boys at trial, it deprecates this testimony as much less satisfactory than their live testimony.

We are well aware of the differences occasioned by the use of depositions rather than testimony in person. Nonetheless, having witnesses testify at trial by deposition remains an approved alternative. For example, the use of depositions has become prevalent to preserve the testimony of medical experts. Indeed, Melton himself relied on the deposition testimony of one of his own medical experts, his treating physician, illustrating how widespread the practice is.

We have reviewed the deposition testimony by the three miscreants. The boys freely admitted they had vandalized the switch prior to the accident. With no dispute over their culpability, we are at a loss to discern from the record what prejudice Railroad suffered because such testimony was presented by deposition and not live. Moreover, the record fails to disclose what attempts, if any, Railroad took to secure these boys' presence at trial and whether its efforts to do so had been thwarted.

A troubling aspect concerning these three witnesses is Railroad's assertion that they could not be impleaded as third party defendants. Melton responds this claim is not significant because Railroad probably would be unable to collect any judgment entered against the three youths. When their depositions were taken in April 1987,

nearly two years after the accident occurred and several months before the trial in September 1987, the boys were fifteen years old and sophomores in high school. None testified to having a job. Despite their relative youth and possible lack of employment, we consider Melton's argument of their financial insolvency highly speculative.

■ While we are unswayed by Melton's argument, we do not believe Railroad's inability to implead these three youths as third party defendants requires our finding plaintiff's chosen forum to be inconvenient. Railroad can pursue its right of contribution, if any, against these three in Illinois. Nothing in the record suggests that Railroad is precluded from initiating its own action in Illinois against them. We have unearthed no Missouri case mandating the dismissal of an action for forum non conveniens because of a defendant's inability to implead other persons as third party defendants. We conclude that, after our review of the six factors enunciated in *Riederer* and *Besse* in the context of this case, the trial court did not abuse its discretion in not granting Railroad's motion to dismiss Melton's action on the ground of forum non conveniens.

Railroad's second point states Melton failed to make a submissible case. Railroad argues the uncontroverted evidence established that the teenagers whose vandalism caused the accident were not railroad employees and no evidence existed that Railroad should have foreseen the acts of vandalism or that Railroad was even slightly negligent in producing Melton's injury. Railroad emphasizes that liability should not be foisted upon it merely because Melton sustained injuries from an on-the-job accident. Absent any evidence of foreseeability, Railroad asserts the trial court erred in overruling its motion for directed verdict.

■ In testing the sufficiency of the evidence, we must view the evidence in the light most favorable to the jury's verdict and afford the prevailing party the benefit of all reasonable inferences which can be drawn from the evidence. *Reed v. Hercu-*

*les Construction Co.*, 693 S.W.2d 280, 281 (Mo.App.1985). Applying this standard, we believe there was adequate evidence to permit the case to go to the jury on the issue of Railroad's negligence. Railroad states that the parties do not dispute the vandalism by the three teenage boys triggered the accident. We agree that their intentional conduct was a contributing factor in Melton's injuries. There is no question, however, that there was sufficient evidence from which a jury could find that Railroad was negligent.

Melton introduced the deposition testimony of Donald Hongsermeier, an engineer in Railroad's employ. He testified that on June 14, 1985, about five weeks prior to Melton's accident, he encountered the same situation at the same switch. The train which he was operating traveled onto the siding because the switch had been aligned for the siding, instead of the main track. Although the train traveled onto the siding, Hongsermeier successfully applied the brakes and no collision occurred. After learning from his brakeman that the switch lock had been broken and the switch misaligned, Hongsermeier radioed that information to the Benton yard operator. Whether vandalism was the cause of this episode was not established at trial.

Apparently Hongsermeier's experience was never communicated to any inspector or any engineer who operated through the area where the siding was located. The persons who inspected and maintained the switch testified that they had made no repairs to this switch any time after Hongsermeier reported the misaligned switch. The track inspector for Railroad testified that he went past the Boothby siding on an average of twice a week and knew of no broken locks anywhere near the Boothby siding or in his district. That he and other Railroad authorities were unaware of the Hongsermeier episode of June 1985 permits a jury inference that Railroad did not exercise reasonable diligence to prevent a repetition of such occurrence. From this inference the jury could conclude that Railroad failed to provide reasonably safe conditions

for work and was thereby negligent as instructed in Melton's verdict director.

Also noteworthy is the testimony of the three teenagers. They apparently accomplished their vandalism without great difficulty. They merely stuck a spike in the lock on the switch, hit the lock with a shaft and broke it. They then threw the switch and bent the aluminum target which shows the direction in which the switch was lined. According to one of the boys, the bending of the target was easily accomplished because it was so "flimsy."

Considering the evidence, as we must, in a light most favorable to Melton, the jury could have found that Railroad was negligent in not taking more aggressive actions to prevent tampering with the switch lock box. The prior misalignment incident, coupled with the relative ease in which the three teenagers accomplished their vandalism of the switch box, presented evidence from which the jury might infer negligence by Railroad.

 Railroad is correct that the FELA does not make the employer an insurer. *Inman v. Baltimore & Ohio Railroad*, 361 U.S. 138, 140, 80 S.Ct. 242, 243, 4 L.Ed.2d 198, 201 (1959). That the harm complained of was reasonably foreseeable is still "an essential ingredient of Federal Employers' Liability Act negligence." *Gallick v. Baltimore & Ohio Railroad*, 372 U.S. 108, 117, 83 S.Ct. 659, 665, 9 L.Ed.2d 618, 626 (1963). However, the FELA has been construed to render the railroad employer liable for injuries incurred by its employees in which the employer's "negligence played any part, even the slightest." *Rogers v. Missouri Pacific Railroad*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493, 499 (1957). The Supreme Court has further stated that "Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury." *Id.*, 352 U.S. at 510, 77 S.Ct. at 450–451. The issue of negligence here was properly submitted to the jury. The trial court did not err in overruling Railroad's motion for directed verdict.

 In its final point Railroad challenges the exclusion of an exhibit offered at trial. The exhibit showed that from 1966 to 1986 Railroad had made contributions totaling $48,640.26 to the Railroad Retirement Board for disability payments in Melton's behalf. Railroad's offer of proof was overruled upon Melton's objection that Railroad had not laid a foundation to show it had any right to a setoff. On appeal Railroad raises the issue of its entitlement to a setoff against any jury award to Melton for the contributions of $48,640.26 for payments previously made by it to the Railroad Retirement Board in Melton's behalf for disability benefits which he had received.

Section 5 of the FELA, 45 U.S.C. § 55, provides that in an FELA action a railroad "may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought." Railroad submits that this statute allows a railroad to set off against a judgment in a FELA action payments made pursuant to the Railroad Retirement Act of 1937, 45 U.S.C. § 231. In support of its position, Railroad cites *Clark v. Burlington Northern, Inc.*, 726 F.2d 448 (8th Cir.1984), which held payments made by the railroad to an employee under a voluntary disability plan were deductible from a jury award in an FELA action. *Id.* at 451. Railroad argues that payments made under the Railroad Retirement Act should be set off just as payments under voluntary disability plans are deductible.

We disagree. In *Clark* the court determined that the employer's manifest intent was to create a voluntary disability plan supplemental to sums recovered under the FELA. *Clark*, 726 F.2d at 451. Although an insurance company administered the plan, Burlington Northern wholly funded it, the plan was not a part of any collective bargaining agreement as are other fringe benefits, and the disability plan explicitly

provided that amounts paid would decrease benefits allowable under the FELA. *Clark,* 726 F.2d at 451.

Unlike the voluntary contribution in *Clark,* the contributions made to the Railroad Retirement Board which Railroad seeks to recover were required by federal law under the Railroad Retirement Act. *See* 45 U.S.C. § 231. Railroad was responsible for these contributions to which respondent was entitled under the Railroad Retirement Act whether or not he was injured on the job. 42 U.S.C. § 231a. Employees contribute in part to the fund. Finally, the nature of the benefits afforded under the Railroad Retirement Act is separate and distinct from any recovery by respondent under the FELA.

The early case of *Hetrick v. Reading,* 39 F.Supp. 22 (D.N.J.1941), is instructive. The court, when confronted with the issue whether a railroad may set off payments made under the Railroad Retirement Act against damages awarded under the FELA, stated as follows:

> Under the Employer's Liability Act, an injured employee is given the right to an award of damages for his injury ... Separate and apart from his pecuniary loss in diminished earning capacity, he is entitled to recover for his pain and suffering, an element difficult to measure. The objects of the two pieces of legislation are entirely foreign to each other, and we are of the view that there never was a legislative intent that a jury giving consideration to the last named elements was to draw into its calculations the annuities provided for by the Retirement Act so that payments made by the employer under the latter legislation would be returned to it. Under these circumstances we do not feel that the annuity was ever intended to restore injured employees to a theoretical status quo, but on the contrary was intended to make secure in society those employees suffering injury after thirty years of service, or perhaps because of thirty years of service. Recovery under the Liability Act in

such case is beside the point, because that is an attempted restorative alone. *Hetrick,* 39 F.Supp. at 25.

In the recent case of *Folkestad v. Burlington Northern, Inc.,* 813 F.2d 1377 (9th Cir.1987), in a thorough discussion of the proviso to section 5 of FELA, 45 U.S.C. § 55, the court observed that the legislative history of section 5 indicated that the section was enacted to bar devices the railroads were using to exempt themselves from full liability for employee injuries. 813 F.2d at 1379. The court further related that the statute in part codifies the common law collateral source rule which prevents a tortfeasor (the employer) from reducing its liability by payments that the injured party (the employee) has received from sources collateral to the tortfeasor. *Id.* at 1380. Citing *Hetrick,* the court specifically stated that payments under the Railroad Retirement Act, a social program funded by collections from the employer and employee and to a limited extent from the general public, and designed to facilitate the retirement of elderly railroad employees, were likewise deemed to come from a collateral source. 813 F.2d at 1380.

Even in *Clark v. Burlington Northern, Inc.,* upon which Railroad relies, the eighth circuit noted that the collateral source rule undisputedly applies to payments made under the Railroad Retirement Act and other benefits received under social legislation not directly attributable to contributions of the employer. 726 F.2d at 451 n. 2. Evidence of such payments is inadmissible in FELA actions. *Eichel v. New York Central Railroad,* 375 U.S. 253, 254, 84 S.Ct. 316, 317, 11 L.Ed.2d 307, 309 (1963). The trial court here properly rejected Railroad's efforts to set off payments it made to the Railroad Retirement Board against the jury's award of damages in the FELA action.

The judgment of the trial court is affirmed in all respects.

SMITH, P.J., and SATZ, J., concur.