Herbert L. SNIPES, Appellee,

v.

CHICAGO, CENTRAL & PACIFIC
RAILROAD COMPANY, A
Corporation, Appellant.

No. 90–1337.

Supreme Court of Iowa.

April 15, 1992.

David B. Potter, Eric R. Miller and Jeffrey J. Bouslog of Oppenheimer, Wolff & Donnelly, St. Paul, Minn., for appellant.

Sheldon Gallner of Gallner & Gallner, Council Bluffs, and Richard F. Sharrard of Blunt & Schum, Edwardsville, Ill., for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

A jury awarded plaintiff Herbert Snipes $357,500 on his claim for a work-related injury under the Federal Employers' Liability Act (FELA), 45 U.S.C. sections 51–60 (1989). Snipes' employer, defendant Chicago, Central & Pacific Railroad Company (railroad), appeals the judgment on the following grounds: (1) the verdict is not supported by substantial evidence; (2) excessiveness of the verdict; and (3) the collateral source rule should not have been applied to prevent the jury's consideration of Snipes' railroad retirement benefits.

Our review is for the correction of errors at law. Iowa R.App.P. 4. Finding no error, we affirm.

I. *Background Facts.*

Snipes' claim stems from an accident that occurred October 15, 1986, at the train yard in Council Bluffs, Iowa. Then aged fifty-three, Snipes had been a railroad employee for thirty-two years. He was a "carman" engaged in the work of repairing and rerailing train cars and locomotives.

On the day of the accident a co-worker asked Snipes to help close a "rough shutting" boxcar door. Unaware that a crack in the door's track was preventing it from closing properly, Snipes' co-worker tugged on the door with a chain attached to a forklift while Snipes pushed against it to get the bind out. The door unexpectedly came off its track, hitting Snipes' right side and throwing him onto the loading dock.

Snipes immediately suffered pain in his right shoulder and foot. Later that day he sought treatment in a hospital emergency room. Medical personnel took x-rays, placed his arm in a sling, and wrapped his foot. Snipes missed one day of work and then returned to light duty answering the telephone for two to three weeks.

Several days after the accident Snipes consulted Dr. James O'Hara, an orthopedic surgeon, complaining of continued pain. O'Hara took additional x-rays and observed pain and swelling in Snipes' right shoulder, right arm and right foot. He diagnosed chronic rotator cuff impingement syndrome, acute rotator cuff tendonitis, a crush injury to the right foot, and a ruptured right bicipital tendon. In pretrial depositions O'Hara testified that rupture of

the biceps tendon will generally result in associated damage to the rotator cuff. But he insisted that he did not observe a tear in Snipes' right rotator cuff when he examined him October 20, 1986.

Snipes eventually resumed his regular duties at work but continued to consult O'Hara for pain associated with his injuries. A cortisone injection given in November 1987 failed to afford any relief. In December 1987 Snipes consulted another orthopedic surgeon, Anil Agarwal. After examining an arthrogram of Snipes' right shoulder, Agarwal diagnosed "a very significant rotator cuff tear." The tear was surgically repaired January 2, 1988. Subsequently a smaller tear was discovered and repaired in Snipes' left shoulder.

Dr. Agarwal prescribed a program of physical therapy aimed at "work-hardening" but Snipes failed to complete the course due to persistent pain during the lifting and carrying exercises. Unable to return to work, Snipes began receiving benefits of $1300 per month under the Railroad Retirement Act (RRA). *See* 45 U.S.C. § 231a(a). Further facts will be detailed as they pertain to the issues raised on appeal.

## II. *Suit Under FELA.*

Snipes sued the railroad for damages based on four claims of negligence: failure to provide reasonably safe tools and equipment, failure to provide reasonably sufficient help to perform assigned tasks, failure to provide a reasonably safe work environment, and failure to warn of the dangerous condition of the boxcar he was working on. He rested his claims on section 51 of the FELA which provides, in pertinent part, as follows:

> Every common carrier by railroad while engaging in commerce between any of the several States ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or

> by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.

■ The FELA, which predated the wide passage of workers' compensation statutes in this country, was enacted by Congress to "provide the exclusive means of recovery for injured railroad workers and to supersede state law as it related to injuries in interstate commerce." Granger, *The Federal Employers' Liability Act,* 19 S.Tex.L.J. 349, 353 (1978). The Act does not bar recovery based on common-law concepts of contributory negligence, but instead employs comparative negligence principles. *See* 45 U.S.C. § 53 (damages diminished by amount of negligence attributable to the employee). The common-law defense of assumption of the risk was rejected. *See* 45 U.S.C. § 54 (employee shall not be held to assume risks of employment where injury or death results from carrier's negligence). The Act also did away with the fellow servant rule. *See* 45 U.S.C. § 51 (carrier liable in damages for injury or death resulting from negligence of its officers, agents, or employees).

■ Actions under the FELA may be filed in either state or federal court. *See* 45 U.S.C. § 56 (concurrent jurisdiction). But federal law governs the definition of negligence and the measure of damages in FELA cases. *Urie v. Thompson,* 337 U.S. 163, 174, 69 S.Ct. 1018, 1026, 93 L.Ed. 1282, 1295 (1949); *Carter v. Chicago, Rock Island & Pac. R.R.,* 247 Iowa 429, 434, 74 N.W.2d 356, 358 (1956).

■ Recovery under the FELA requires an injured employee to prove that the defendant employer was negligent and that the negligence proximately caused, in whole or in part, the accident. *Tennant v. Peoria & Pekin Union Ry.,* 321 U.S. 29, 32, 64 S.Ct. 409, 411, 88 L.Ed. 520, 524 (1944). To meet this standard, the plaintiff must present "probative facts from which the negligence and the causal relation could reasonably be inferred." *Id.,* 321

U.S. at 32, 64 S.Ct. at 411, 88 L.Ed. at 524. The liberality with which the Supreme Court has applied this test is demonstrated by the following quote from *Rogers v. Missouri Pacific Railroad Co.*:

> Under this statute [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played a part, *even the slightest,* in producing the injury or death for which damages are sought.

352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493, 499 (1957) (emphasis added).

This low threshold for recovery was re-affirmed six years later in a case involving a railroad worker who suffered a double leg amputation following an infectious bug bite. *Gallick v. Baltimore & Ohio R.R.,* 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963). Reversing the judgment of a state appeals court, the Court found sufficient proof of a causal link between the insect and a pool of stagnant water in the train yard to raise a jury question on the issue of causation. *Id.* at 113, 83 S.Ct. at 663, 9 L.Ed.2d at 623. As in the earlier *Tennant* and *Rogers* cases, the court ruled that the controlling question on the issue of sufficiency of evidence and causation was "whether there was evidence that *any* employer negligence caused the harm, or, more precisely, enough to justify a jury's determination that employer negligence had played *any* role in producing the harm." *Id.* at 116, 83 S.Ct. at 664, 9 L.Ed.2d at 625.

### III. *Issues on Appeal.*

■ The railroad challenged the jury verdict for Snipes by motions for judgment notwithstanding the verdict and for new trial. On appeal from the denial of defendant's motions, we review the evidence in the light most favorable to the jury's verdict. *Winter v. Honeggers' & Co.,* 215 N.W.2d 316, 321 (Iowa 1974). The railroad assigns error to the court's failure to grant a directed verdict on the question of its liability, failure to grant a new trial based on the alleged excessiveness of the verdict, and also claims the court erred in its application of the collateral source rule. We shall consider the arguments in turn.

A. *Sufficiency of the evidence.* The railroad urges its entitlement to a directed verdict or new trial on two grounds. First it claims the record contains no substantial proof of its negligence. Second, because the jury assigned no fault to the plaintiff, the railroad claims the verdict is without support in the record, thus entitling it to a new trial. The contentions are without merit.

■ The evidence revealed a company safety rule which required employees to "[k]now that roller type doors and side doors on cars are properly tracked before operating them. If they are not properly tracked, take necessary action to safeguard their use." Snipes' supervisor also testified about a company policy requiring the inspection of each car coming into the yard from any location. These policies are consistent with the general duty of inspection imposed upon railroads for the safety of persons likely to be working on or near the cars. *Chicago, Rock Island & Pac. R.R. v. Williams,* 245 F.2d 397, 403 (8th Cir.) *cert. denied,* 355 U.S. 855, 78 S.Ct. 83, 2 L.Ed.2d 63 (1957). Breach of this duty constitutes negligence. *Id.*

Snipes' co-worker, Gary Jones, was the "write-up" man charged with writing up bills, inspecting cars, and tagging those with defects. He admitted that he had not inspected the track of the boxcar door with which he sought Snipes' help. Nor had he determined whether the boxcar had been inspected by anyone else. Yet in spite of these deviations from company policy and his own job duties, he engaged Snipes' assistance. We think a jury could reasonably find he negligently imperiled Snipes' safety by doing so.

■ Nor do we think it was unreasonable for the jury to assign all the fault for this mishap to Jones, and none to Snipes. Although all employees were charged with knowing that door tracks were operating properly before using them, the task of inspection was plainly assigned to Jones. Snipes testified that he "figured [Jones] already had everything checked out or he

would never have the forklift up to the door." Given these facts, and the low threshold of proof necessary to sustain a FELA claim, a jury question was clearly generated concerning the relative fault of the parties. We find no error in the trial court's refusal to set aside the verdict for the jury's failure to assign some portion of fault to Snipes.

B. *Size of the verdict.* The railroad also assails the jury's $357,500 verdict on grounds that it is unsupported by the record and generally excessive.

▪▪▪ The alleged insufficiency of the evidence rests on the railroad's assertion that Dr. Agarwal failed to state, within a reasonable degree of medical certainty, that Snipes' right rotator cuff tear was caused or aggravated by the accident on October 15, 1986. The record simply belies this assertion. Although an early opinion letter by the doctor relates his view that the tear was caused by the years of heavy lifting associated with Snipes' job, he clarified in later sworn testimony his belief that the fall aggravated this condition and ultimately caused the massive rotator cuff tear. He based his opinion on the symptoms noted in the emergency room records, Snipes' intervening medical history, and the arthrogram results which had not been available to prior treating physicians. The record clearly contains substantial evidence of causation to support the jury's verdict.

▪▪▪ Similarly, the record contains substantial proof from which the jury could determine the extent of Snipes' loss. Snipes was forced to retire at age fifty-five. He testified that he had not planned to stop working at such an early age. Before becoming disabled he earned roughly $25,000 per year. With a seventh-grade education and no other skills, his prospects of other employment were arguably slim to nonexistent. In addition to this evidence of wage loss, Snipes offered proof that his injuries are permanent and will cause him pain in the future.

Defendant countered this evidence of loss with proof that Snipes could obtain alternate employment and that, in fact, other disabling injuries would have shortened his work life expectancy in any event. But, like the district court, we cannot say as a matter of law that the jury's assessment of Snipes' loss was either lacking in evidentiary support or flagrantly excessive. We find no error in the court's refusal to set aside the verdict or reduce the award on this ground.

▪▪▪ C. *Applicability of the collateral source rule.* The railroad sought to introduce evidence that Snipes received a monthly annuity under the Railroad Retirement Act (RRA), 45 U.S.C. § 231a(a). The district court rejected this evidence and, we think, rightly so. The federal law is well settled that, under the FELA, the collateral source rule operates to prevent consideration of RRA disability pension payments in mitigation of damages suffered by an injured employee. *Eichel v. New York Cent. R.R. Co.*, 375 U.S. 253, 254, 84 S.Ct. 316, 317, 11 L.Ed.2d 307, 308–09 (1963). *E.g., Clark v. Burlington Northern, Inc.*, 726 F.2d 448, 451 n. 2 (8th Cir.1984); *Caughman v. Washington Terminal Co.*, 345 F.2d 434, 436 (D.C.Cir.1965); *Page v. St. Louis Southwestern Ry.*, 312 F.2d 84, 94 (5th Cir.1963); *Sinovich v. Erie R.R.*, 230 F.2d 658, 661–62 (3d Cir.1956); *Lucht v. Chesapeake & Ohio Ry.*, 489 F.Supp. 189, 190 (W.D.Mich.1980); *Laird v. Illinois Cent. Gulf R.R.*, 208 Ill.App.3d 51, 68–71, 153 Ill.Dec. 94, 104–05, 566 N.E.2d 944, 954–55 (1991). The rationale underlying these decisions is that the benefits received, much like social security, "are not directly attributable to the contribution of the employer, so they cannot be considered in mitigation of the damages caused by the employer." *Eichel*, 375 U.S. at 254, 84 S.Ct. at 317, 11 L.Ed.2d at 309 (quoting *New York, New Haven & Hartford R.R. v. Leary*, 204 F.2d 461, 468, *cert. denied*, 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 370 (1st Cir.1953)).

▪▪▪ Defendant contends that recent nationwide trends in tort reform reflect public sentiment against continued application of the collateral source rule in FELA and other cases. Calling for a "critical re-examination" of the rule's negative impact,

defendant urges this court to depart from prior precedent in order to eliminate an alleged double recovery for Snipes in this case.

It may well be true that review of the policies underlying application of the collateral source rule in FELA litigation is in order, but our decision must be guided by federal case law. *Norfolk & Western Ry. v. Liepelt*, 444 U.S. 490, 493, 100 S.Ct. 755, 757, 62 L.Ed.2d 689, 693 (1980). That precedent uniformly rejects the argument advanced by the railroad. Moreover, our own tort law codifies the very exception to the collateral source rule defendant asks us to reject. *See* Iowa Code § 668.14(1) (In actions seeking damages for personal injury, evidence of collateral sources of payment is admissible unless "the previous payment or future right of payment is pursuant to a state or federal program or from assets of the claimant."). No abuse of the trial court's discretion in disallowing the evidence has been shown.

The same reasoning leads us to reject the railroad's alternative claim that the jury's award should have been reduced by the total RRA payments received by Snipes or, at a minimum, by that portion representing the railroad's contribution to the annuity. Although section 55 of the FELA authorizes an offset for certain company payments made on behalf of an injured employee, the railroad cites no controlling authority that would include RRA benefits within that category. Prior decisions are clearly to the contrary. *Brady v. National R.R. Passenger Corp.*, 714 F.Supp. 601, 602 (D.Conn.1989); *Laird*, 208 Ill.App.3d at 71–72, 153 Ill.Dec. at 106, 566 N.E.2d at 956; *Melton v. Illinois Cent. Gulf R.R.*, 763 S.W.2d 321, 326 (Mo.App.1988).

AFFIRMED.